Argued February 21, affirmed February 27, 1957

# CITY OF PORTLAND v. BINGHAM ET AL

307 P. 2d 492

*Marian C. Rushing,* Chief Deputy City Attorney, and *Robert T. Mautz,* Special Co-counsel for the Exposition-Recreation Commission, Portland, argued the cause for respondent. With them on the brief was Alexander G. Brown, City Attorney, Portland.

*Willis A. West,* Chief Civil Deputy District Attorney, Portland, argued the cause for appellants. With him on the brief was William M. Langley, District Attorney, Portland.

PER CURIAM.

The parties to this appeal, the City of Portland, a municipal corporation, acting by and through its Exposition-Recreation Commission, as plaintiffs, and Mason L. Bingham, Chairman, and H. W. Bruck, R. L. Fanning, Mrs. W. H. Copeland and Kenneth L. Crookham, Commissioners, as the Tax Supervising and Conservation Commission of Multnomah County, as defendants, commenced this proceeding by filing with the court a statement of the case pursuant to ORS, ch 27, which authorizes the determination of a controversy without suit or action. Their purpose was to obtain a judicial decision interpreting certain provisions of the charter of the City of Portland relative to the powers of the Exposition-Recreation Commission. The case was heard by a panel of three judges of the Circuit Court for Multnomah County, The Honorable James W. Crawford, The Honorable James R. Bain, and the Honorable Paul R. Harris, who rendered an opinion in writing favorable to the contention of the

City, and entered a judgment from which the defendants have appealed.

The opinion of the circuit court (with footnotes of our own) follows:

## "*The Statement of Controversy*

"We have before us for interpretation Ch. XIV of the City Charter, containing Sections 14-101 to 14-107, both inclusive (added by vote of the people May 21, 1954) as amended by vote of the people May 18, 1956, 'by adding thereto two sections to be numbered 14-108 and 14-109.' Ch. XIV creates an Exposition-Recreation Commission, Art. 1, Sec. 14-101 as a 'department of the City of Portland'. Sec. 14-102 makes provision for members and service. Sec. 14-103 Powers and Duties, details at length the power and authority of the ER Commission. (The recital of the powers and authority is so detailed and extensive and so well known to all of us that repetition here would serve no purpose.)* Sec. 14-104 provides for the issuance and sale of bonds to be general obligations of the City the proceeds of which shall be expended as therein indicated 'the balance to be placed in a special fund to be known as the E-R Fund and said fund shall be expended on the order of the ER Commission for the purposes set forth in this chapter including * * *' Sec. 14-105 relates to the financial affairs of the Commission. Sec. 14-106 to the use of city facilities and 14-107 to certain exemptions of employees from civil service requirements. Prior to May, 1956 bonds in the amount of

---

* In general, § 14-103 invests the Exposition-Recreation Commission with full and complete powers to acquire a site or sites, to construct buildings and acquire facilities for exposition and recreation purposes, and to operate and administer such facilities. The full text of this section is appended to this opinion.

$8,000,000 were sold and the proceeds placed in the special fund, supra.

"Section 14.108 reads—'The powers and authority granted the Exposition Recreation Commission by section 14.103 *shall be exercised only with respect to acquisition of real property,* construction, erection, maintenance and repair of buildings and facilities located *easterly* of the main channel of the Willamette River.' (Emphasis added.)

"Sec. 14.109 reads—'USE OF CITY OWNED PROPERTY. In the event that any city property *east* of the main channel of the Willamette River be selected as a site for an Exposition-Recreation center, the Council shall make such property available to the Exposition-Recreation Commission for the purposes of this act, without charge.' (Emphasis added)

"*Defendants contend* Sec. 14.108 amounts to a 'repeal by implication of all other powers previously delegated to said Commission by Sec. 14.103 and that Sec. 14.109 does not reinstate the power of site selection.' That the only powers remaining with the ER Commission are limited to 'acquisition of real property, construction, erection, maintenance and repair of buildings,' *provided* an east side site is selected and that the power of selection is vested in the City Council. That the voters intended a limitation on the *power* of the ER Commission.

"*Plaintiff contends* ' * * * the intent of the electorate was to limit only the *location* of buildings and facilities for the ER Commission and not to limit the powers and authority of the Commission.'

"Both sides agree the situation presents ambiguities (this in the Statement of Controversy and in the briefs) and the panel concurs. Plaintiff asserts the workability of the entire legislation as originally writ-

ten and as *amended* or as *'added to'* if the construction sought by plaintiff is given; defendants concede (in argument) present unworkability if their ideas of interpretation are followed but suggest the Court might further implement and clarify.

"Following is Paragraph V from the Statement of Controversy.

" 'Following the May election aforesaid, the Exposition-Recreation Commission on behalf of the City prepared a fiscal budget for the fiscal year 1956-1957 which was presented to the City Council as Budget Committee and by the said Budget Committee to the Tax Supervising Conservation Commission; said budget proposal included estimates of expenditures for assistants and cost of site acquisition and for construction of an exposition-recreation center and services connected therewith; the defendants, pursuant to ORS 294.650†, ordered all estimates of expenditures to be stricken from the said proposed budget except for clerical assistants as administrative expense *pending Court determination* of the authority and power of the Exposition-Recreation Commission; that in accordance with said order the Exposition-Recreation Commission prepared and the City Council as Budget Committee submitted to the defendants a revised budget containing only office expenses with $5000 of the funds of the Commission marked as Emergency and Unforeseen Expenditures and the balance of said funds left unappropriated; said revised budget was approved and is the present budget of the City for the Exposition-Recreation Commission'.

---

† Under ORS 294.650 the Tax Supervising and Conservation Commission is authorized to strike from the budget of any municipal corporation any item for an expenditure not authorized by law.

## "Our Conclusion

"It is our opinion that mention of site selection in Sec. 14.103 authorizing the Commission to acquire title to real property by any appropriate method 'as the Commission shall deem suitable for the site thereof,' confers authority on the Commission to select the site. Site selection is not mentioned in Section 14.108. It is mentioned in Section 14.109. If (as contended) Section 14.108 is to be interpreted as an implied repeal of Section 14.103, save as to the powers expressly reserved in Section 14.108, there was no point in mentioning site selection in Section 14.109. In the statement that the Council shall make any selected city property available without declaring that the Council shall select the site, there arises a clear implication that the Commission shall select the site. Section 14.109 amounts to a reaffirmation of this power previously conferred upon the Commission by 14.103.

■ "We interpret this legislation as expressing the intent of the voters to limit only the *location* of the buildings and facilities for ER Commission purposes to the *east* side and not to limit the *powers or authority* of the Commission in any other way. The rules of statutory interpretation here applicable, are so well established that we do not consider it necessary to repeat them nor cite authority therefor. These most pertinent may be said to be the adoption of such interpretation as will give effect to the entire legislation, will not lead to absurd results, will promote the objectives sought and give effect to the declared intent of the voters. And in seeking this intent, which of course is the primary search in cases of this kind, we may consider, where ambiguity exists as here, the *history* of the legislation from its inception to its present form.

From the inception of this controversy the disagreement was addressed to *site* not to authority; to East side v. West side. This disagreement was presented by the press, radio, litigation, election publicity and word of mouth. We are sure no one could have lived through these days and gained any other impression. 'Judges do not live in a vacuum.' We cannot close our eyes to the obvious nor fail to hear the audible. And this contest was certainly both visible and audible. Nothing was left to the imagination. The untoward results that would follow acceptance of defendants' interpretation are also obvious. *If* (as contended by defendants) there was an implied repeal stripping the ER Commission of all powers previously specifically conferred save acquisition, construction, erection, maintenance and repair of buildings *if* the East side site is chosen, then even *if* an East side site is chosen the ER Commission is emasculated and powers the voters thought they were conferring on the Commission must be exercised elsewhere, if at all. And *if* (as contended) the City Council now has power to select the site and *if* the Council should choose a West side site, then the ER Commission would pass completely out of the picture and we would have a situation where the agency created by the people and acting for it has been superseded by the City Council by some process, not too clear.‡ Any resemblance (if this is the result) be-

---

‡ In the Supreme Court the defendants abandoned the contention that the City Council now has the power to select the site. They say in their brief: "The lower court was of the opinion that the authority of the Commission to select the site had not been disturbed by the amendatory acts. The defendant is in accord with that part of the court's determination. This view is predicated upon the reasoning that the conferring of power to acquire real property for building purposes necessarily implies the privilege of selecting its location unless such power is expressly denied or limited."

tween what the people had in mind in May, 1954 and the result of the May, 1956 election, is purely coincidental, if that. Repeals by implication are not favorites of the law. This legislation, it is agreed, is susceptible to two interpretations; *one* resulting in an unworkable act, in patent need of additional 'implementation and clarification,' in negation of what the voters thought they were getting; the *other* conforming to the original plan and resulting in a presently workable act, all without doing the expressed intention of the voters. We have no hesitancy in adopting the second theory, feeling that as we interpret the amendments and additions of May, 1956, they can and should be correlated with the legislation of May, 1954, and that together they form one, clear, understandable, and workable plan.

"Therefore, it is our conclusion that it was the intent of the electorate to limit only the location of the buildings and facilities for the E-R Commission to the east side of the Willamette river, and it was not the intention of the voters to limit the powers and the authority of the Commission in any other way."

■ The foregoing opinion clearly and ably states the issue and the reasoning in support of the interpretation placed by the circuit court upon § 14.108. We adopt it as the opinion of this court with a single reservation. This has to do with the effect given by the court below as to what is referred to "as the legislative history" of the amendment. We had occasion to discuss the question of legislative history of a statute as an aid to its interpretation in *City of Portland v. Duntley,* 185 Or 365, 381-383, 203 P2d 640, and to call attention to some of the limitations upon its use. We were dealing there with an act of the legislative assembly, here with

an initiative measure passed by the people. As to such a measure we said in *Anthony v. Veatch,* 189 Or 472, 498, 220 P2d 493, 221 P2d 575, ''the courts should indulge the same presumption as to the knowledge of historical facts on the part of the people, as they indulge with reference to acts passed by the legislature.'' But we question whether, in seeking to find the meaning of ambiguous legislation enacted pursuant to the initiative, a court may draw upon its knowledge of debates and discussion regarding the pending measure in the press, on the radio, and by way of election publicity (unless it be in an official publication such as the Voters' Pamphlet: *Eugene School Dist. No. 4 v. Fisk,* 159 Or 245, 256-257, 79 P2d 262), and word of mouth. It suffices for us to say that, without consideration of these sources of information, we are satisfied that the circuit court correctly interpreted the language of § 14-108.

■ We agree, however, that it was a matter of common knowledge—''a historical fact'' of which a court might take judicial notice—that there was a public controversy in the City of Portland over the location of the new Exposition-Recreation Center as between the ''East side'' and the ''West side'' of the city, and that the legislation may be interpreted against the background of that knowledge. The ambiguity in § 14.108 arises from the fact that § 14.103 confers upon the Exposition-Recreation Commission many powers besides those enumerated in § 14.108, for example, the power to operate the center and facilities and the power to lease the facilities. To say that these powers shall only be exercised with respect to the acquisition of real property and the construction, erection, and maintenance and repair of buildings and facilities, whether on the east side of the river or anywhere else, is to

speak nonsense, and yet that is the literal meaning of the words. On the other hand, to interpret the section as intended to repeal the entire grant of authority and powers to the Commission except the powers mentioned in the section would be inadmissible, not only because of the presumption against implied repeals, but also because the section deals with the future exercise of the powers and authority (all of them) granted by § 14.103. It would be very strange to undertake the complete withdrawal of a power by providing that it "shall be exercised" in a certain manner. Of course, the section is concerned with some sort of a limitation on the powers granted, and any fair reading of it indicates that the limitation has to do with the location of the Exposition-Recreation Center. We think that the framers of the section intended to say that the powers and authority granted the Commission to acquire real property, and construct, erect, and maintain and repair buildings and facilities shall be exercised only with respect to real property and buildings and facilities located easterly of the main channel of the Willamette river. That a court is authorized thus by construction to give purpose and meaning to a statute which, when literally read, has neither, we think is not open to question.

The judgment and decree of the circuit court is affirmed.

No costs will be allowed to either party.

## APPENDIX

"Section 14-103. POWERS AND DUTIES. The Exposition-Recreation Commission shall have power and authority and it shall be its duty for and on behalf of the City of Portland:

"To construct, erect, equip, maintain and repair buildings and facilities for a multi-purpose coliseum

stadium, playfield, exposition and exhibition center and war memorial, for conventions, expositions, sports events, concerts, shows of all kinds including livestock shows, automobile shows, housing shows and ice shows, patriotic, educational and fraternal meetings, and church conventions, and any other types of entertainment and recreational events, whether of exhibition or of participation character, that the Commission may find appropriate, including educational exhibits and park and recreational facilities, together with facilities for veterans' organizations as the Commission may find desirable or appropriate, and facilities connected therewith, including but not limited to parking area for use of the public for exhibitors and for the storage of supplies incidental to exhibitions, shows, etc., or for storage of maintenance equipment;

"To acquire therefor the fee simple title to real property or interests therein by gift, grant, purchase, condemnation or otherwise as the Commission shall deem suitable for the site thereof; and to that end the Commission may acquire the fee simple title to real property for the purpose of exchange for other property which the Commission deems to be a suitable site or sites for such purposes; and to acquire by purchase, condemnation or otherwise such excess property adjacent to such site or sites selected as the Commission may find necessary or appropriate or convenient for the protection, improvement or access to the site or sites selected; to drain, fill and otherwise improve the site or sites and access property adjacent thereto as the Commission may find necessary or convenient, and to sell, lease for a term not exceeding 99 years, rent or otherwise dispose of such excess property for private industrial or commercial development;

"To purchase and install equipment and facilities in or adjacent to the buildings or structures herein set forth and to purchase materials and supplies, and to maintain and repair any and all such equipment and facilities;

"To provide such additional facilities for sports, recreation and entertainment purposes and for the

convenience of persons using the same as the Commission may find suitable or necessary;

"To operate said exposition and recreation center and facilities;

"To lease such facilities for periodic exhibitions or shows for a term not exceeding 20 years plus renewal option; to rent such facilities, or to provide such facilities without charge for civic or charitable events as the Commission may find appropriate and to fix the terms and conditions of such lease, rental or provision; to fix fees and charges relating to the use of said buildings, structures or facilities, and to make and enforce regulations concerning the same;

"To employ professional and technical assistance including managerial and promotional services, special legal services, engineering, auditing, architects' preparation of plans and all other special assistance as the Commission may find necessary or convenient, and to employ clerical assistance and labor and fix the rates of compensation therefor.

"To enter into contracts, incur obligations and do all other acts and things necessary or convenient to carry out the purpose of providing an exposition and recreation center as aforesaid;

"To accept gifts and donations and to contract for and receive federal aid and assistance if available."