Argued December 9, 1959, demurrer sustained; mandamus
disallowed January 20, 1960

# STATE ᴇx ʀᴇʟ CHAPMAN *v.* APPLING

348 P. 2d 759

*Dean F. Bryson,* Portland, argued the cause and submitted a brief for plaintiff.

*Robert G. Danielson,* Assistant Attorney General, Salem, argued the cause for defendant. With him on the briefs were Robert Y. Thornton, Attorney General, and Donal D. Sullivan, Assistant Attorney General, Salem.

LUSK, J.

■■ This is a proceeding in mandamus in which the relator is R. F. Chapman, state senator for the Seventh Senatorial District, comprising Coos and Curry Counties, and the defendant is Howell Appling, Jr., Secretary of State. The case is here on the defendant's demurrer to the alternative writ based on the ground that the alternative writ fails to state facts sufficient to constitute a cause of action. The question presented is whether the legislative assembly of this state has the power to enact a statute increasing the compensation for services of its members beyond that provided by Article IV, § 29, Oregon Constitution, as amended in 1950. We took original jurisdiction because of the public importance of the controversy. The statute whose validity is challenged is ORS 171.071 (Oregon Laws 1959, ch 391), which reads:

"The compensation of members of the Legislative Assembly shall be paid by the State Treasurer out of appropriations for legislative expenses, upon warrants drawn by the Secretary of State, at the rate of $175 per month, as follows:

"(1) Each member of the Legislative Assembly who has attended one or more days of a regular

session shall be paid a sum equal to the salary of a member for 12 months as salary for the year in which the regular session is held. Payment of such sum shall be made as soon as possible after the first day the member attends the regular session.

"(2) Each member of the Legislative Assembly who has attended one or more days of a regular session shall be paid $175 per month as salary for the succeeding year in which a regular session is not held. Payment for each month shall be made at the end of the month.

"(3) If a member of the Legislative Assembly ceases to be a member for any reason before the expiration of his term and during a year in which a regular session is held, and his successor is elected or appointed and qualifies in such year, such successor shall be paid a sum equal to the salary of a member for 12 months as salary for such year. Payment of such sum shall be made as soon as possible after such successor is elected or appointed and qualifies.

"(4) In addition to the salary provided in subsection (3) of this section, the successor referred to in subsection (3) of this section shall receive salary as provided in subsection (2) of this section for the suceeding [sic] year in which a regular session is not held.

"(5) A member of the Legislative Assembly may retain any salary theretofore paid under subsections (1) to (4) of this section if he ceases to be a member for any reason before the expiration of his term.

"(6) If a member of the Legislative Assembly ceases to be a member for any reason before the expiration of his term and during a year in which a regular session is not held, and his successor is elected or appointed and qualifies in such year, such successor shall be paid salary as provided in subsection (2) of this section.

"(7) The presiding officers of the respective houses of the Legislative Assembly each shall be paid an additional compensation equal to one-third

of the sum they are paid as salary as members of the Legislative Assembly under subsections (1) to (5) of this section. Payment of such additional compensation shall be made at the same times and in the same manner as the regular salary is paid. A presiding officer may retain any salary theretofore paid pursuant to this section if he ceases to be a presiding officer for any reason before the expiration of his term."

The statute carried an emergency clause and became effective May 5, 1959. On May 6, 1959, Mr. Chapman made written demand on the defendant for the payment to him of the salary claimed to be due him as a member of the legislative assembly for the year 1959, to-wit, $900, that being the difference between the amount he had previously been paid, to-wit, $1200 (pursuant to Article IV, § 29, Oregon Constitution), and the amount fixed by Oregon Laws 1959, ch 391. The defendant refused compliance with this demand, and the plaintiff thereafter sought the issuance of a writ of mandamus to compel such compliance.

The provision of the constitution which the defendant claims is violated by the 1959 Act is an amendment of Article IV, § 29, which was referred to the people by House Joint Resolution No. 5 of the 45th Legislative Assembly and adopted at the regular general election, November 7, 1950. See Oregon Laws 1951, p 5. The amendment reads:

"The members of the Legislative Assembly shall receive for their services a salary of six hundred dollars ($600) per annum, payable as provided by law. For each session of the legislature, they shall also receive the sum of 10 cents for every mile they shall travel in going to and returning from their place of meeting, on the most usual route, and no other personal expenses. The

presiding officers of the assembly shall, in virtue of their office, receive an additional compensation equal to one-third of their annual allowance as members."

Prior to the adoption of this amendment, Article IV, § 29 read:

"The members of the legislative assembly shall receive for their services a sum not exceeding eight dollars ($8) a day, from the commencement of the session; but such pay shall not be more than 50 days for any regular session. When convened in extra session by the governor, they shall receive eight dollars ($8) per day; but no extra session shall continue for a longer period than 20 days. They shall also receive the sum of 10 cents for every mile they shall travel in going to and returning from their place of meeting, on the most usual route. The presiding officers of the assembly shall, in virtue of their office, receive an additional compensation equal to one-half of their per diem allowance as members."

The foregoing provision was an amendment of Article IV, § 29, adopted in 1942. See Oregon Laws 1943, p 5. As originally adopted in the Constitution of 1859, the section read:

"The members of the legislative assembly shall receive for their services a sum not exceeding three dollars a day from the commencement of the session; but such pay shall not exceed in the aggregate one hundred and twenty dollars for per diem allowance for any one session. When convened in extra session by the governor, they shall receive three dollars per day; but no extra session shall continue for a longer period than twenty days. They shall also receive the sum of three dollars for every twenty miles they shall travel in going to and returning from their place of meeting, on the most usual route. The presiding officers of the assembly shall, in virtue of their office, re-

ceive an additional compensation equal to two-thirds of their per diem allowance as members."

We call attention to these former provisions at this point, because they use the words "not exceeding" before the stipulated compensation, and there are no similar words in the section as it now stands. An argument of the relator based on this change in language will be noticed later in this opinion.

The contention of the relator is that Article IV, § 29, as it now reads and has read since 1950, contains no express language of limitation on the power of the legislature, and none is to be implied; hence the legislative assembly has been set free to fix its own compensation. The section, according to this view, means the same as it would have meant had it read that the members of the legislative assembly shall receive for their services a salary of $600 a year until the legislative assembly shall otherwise provide.

■■ We will discuss this contention in the light of certain well-established principles, namely, (1) that a state constitution does not confer power on the legislature, but is a limitation on power, and therefore it is competent for the legislature to enact any law not expressly or impliedly forbidden by the state constitution or prohibited by the Constitution of the United States, and (2) that a court will not strike down an act of the legislature unless its repugnancy to the constitution is clear and free from all reasonable doubt. These principles are so familiar that it is scarcely necessary to cite authority for them. The opinions in *Jory v. Martin,* 153 Or 278, 56 P2d 1093, a case on which the relator places his main reliance, and *State v. Cochran,* 55 Or 157, 104 P 419, 105 P 884, contain numerous citations to adjudicated cases and the works of learned commentators where these fun-

damental rules of constitutional construction are expounded.

A third principle to be kept in mind is well stated in 11 Am Jur 659, Constitutional Law § 50:

> "A cardinal rule in dealing with Constitutions is that they should receive a consistent and uniform interpretation, so that they shall not be taken to mean one thing at one time and another thing at another time, even though the circumstances may have so changed as to make a different rule seem desirable. In accordance with this principle, a court should not allow the facts of the particular case to influence its decision on a question of constitutional law, nor should a statute be construed as constitutional in some cases and unconstitutional in others involving like circumstances and conditions. Furthermore, Constitutions do not change with the varying tides of public opinion and desire. The will of the people therein recorded is the same inflexible law until changed by their own deliberative action, and therefore the courts should never allow a change in public sentiment to influence them in giving a construction to a written Constitution not warranted by the intention of its founders."

■■ For these reasons, and the further reason that the court is not concerned with considerations of policy or expediency when engaged in the judicial task of construing the fundamental law (*Fouts v. Hood River,* 46 Or 492, 505, 81 P 370, 1 LRA(NS) 483; 11 Am Jur 804, Constitutional Law § 138), we must lay out of view the appealing argument in the brief of counsel for the relator based on the need for the payment of adequate compensation to members of the legislative assembly in order to bring to that body the services of qualified men and women. Similarly, we are not concerned with the suggestion in the brief of the de-

fendant that there is something inherently wrong in conferring upon the legislative assembly the power to fix the compensation of its members. Twenty-one states have constitutional provisions of that kind.[1] Our question, however, is not whether the people of Oregon should confer such power upon the legislative assembly, but whether they have, in fact, done so.

The briefs of counsel for both sides evince a thorough search of the authorities, and the court has made its own independent search; but though there are numerous cases which, as we think, point the way to decision, none has been discovered in which the issue was directly presented of the legislature's power to increase the compensation of its members beyond that fixed by a constitution, and none except *Jory v. Martin,* supra, where the issue directly concerned that question with respect to other state officers. We say "directly presented" to differentiate this case from others presently to be examined which arise out of statutes appropriating money to reimburse members of the legislature for expenses incurred while in attendance on the legislative session.

■ It seems to us clear that where a state constitution in plain, unambiguous language fixes the compensation of a state officer, whether it be a member of the legislature or of the executive or judicial de-

---

[1] Alaska, Art. II, § 7; Colorado, Art. V, § 6; Hawaii, Art. III, § 10; Illinois, Art. IV, § 21; Indiana, Art. IV, § 29; Iowa, Art. III, § 25; Kentucky, Section 42; Maine, Art. IV, Pt. 3, § 7; Michigan, Art. V, § 9; Minnesota, Art. IV, § 7; Mississippi, Art. IV, § 46; Montana, Art. V, § 5; Nevada, Art. IV, § 33; New Jersey, Art. IV, § 4, par. 7; New York, Art. III, § 6; Ohio, Art. II, § 31; South Carolina, Art. III, § 19; Tennessee, Art. II, § 23; Virginia, Art. IV, § 45; Washington, Art. XXVIII, § 21, Amendment 20; Wyoming, Art. III, § 6.

All the above constitutions except that of Alaska contain prohibitions against the legislature raising its own salary during the term. The constitutions of Colorado, Iowa, Tennessee, and Wyoming specify the salary of the first legislature, but allow subsequent legislatures to alter the constitutional amount. As to public officers generally, see 5 ALR2d 1182.

pàrtments of the government, the effect is to divest the legislature of power to determine that that compensation shall be something different, unless there are other provisions of the constitution from which a contrary intention can be drawn. That is the rule of constitutional interpretation which has been applied by the courts in other areas of state government. Thus, in *Livesley v. Litchfield,* 47 Or 248, 83 P 142, 114 Am St Rep 920 (1905), this court, in an opinion by Mr. Justice ROBERT S. BEAN, held that a provision of the charter of the city of Portland which prohibited a person from voting in a municipal election who had not paid a road poll tax was void because it was in conflict with Section 2 of Article II of the constitution of this state, which prescribes the qualifications of voters. This section at that time read:

> "In all elections, not otherwise provided for by this constitution, every white male citizen of the United States, of the age of twenty-one years and upwards, who shall have resided in the state during the six months immediately preceding such election—and every white male of foreign birth of the age of twenty-one years and upwards, who shall have resided in this state during the six months immediately preceding such election, and shall have declared his intention to become a citizen of the United States one year preceding such election, conformably to the laws of the United States on the subject of naturalization, shall be entitled to vote at all elections authorized by law."

It will be observed that the qualifications of voters are all in affirmative, mandatory terms. The court said:

> "This provision is by its terms expressly made applicable to all elections not otherwise provided by the constitution. To empower the legislature, therefore, to add to or abridge the qualifications

of a voter as thus defined, some other provision of the constitution must be pointed out which confers such authority in express terms, or by necessary implication." 47 Or at 250.

More recently, in the case of *State ex rel Powers v. Welch,* 198 Or 670, 259 P2d 112 (1953), we were called upon to determine the constitutional validity of an act of the legislature providing that "* * * a person shall not be eligible to hold the office of county surveyor unless he is registered under the laws of the state of Oregon as a registered professional engineer or a registered professional land surveyor; * * * ." At the time that the case arose, Article VI, § 8 of the constitution provided: "No person shall be elected to a county office who shall not be an elector of the county * * *." No other qualifications were prescribed, and there is no express provision that the qualification stated is the only one that may be required. We held the statute void. The opinion, written by the late Chief Justice LATOURETTE, discloses that the courts of the country, with practical unanimity, support the following statement of the rule, quoted at 198 Or 673, from 3 McQuillin, Municipal Corporations (3d ed), p 234:

"* * * If, however, the constitution prescribes the qualifications of an officer it is, of course, beyond the power of the legislature to prescribe additional qualifications. It is self-evident that a statute cannot change the qualifications fixed by the constitution; * * *."

An extensive annotation upon this question published after the decision in the Welch case may be found in 34 ALR2d 155. See, in particular, page 171, where it is said:

"It is quite generally considered that where the constitution lays down specific eligibility require-

ments for a particular constitutional office, the constitutional specification in that regard is exclusive and the legislature (except where expressly authorized to do so) has no power to require additional or different qualifications for such constitutional office."

A like principle was applied by this court in *Jones v. Hoss,* 132 Or 175, 285 P 205 (1930). A resolution of the legislative assembly authorized and directed the secretary of state to order and allow "the sum of $5 per day during said legislative session to each member of said legislative assembly for the payment of his incidental expenses," and further provided that such payment "shall be in addition to and shall be considered and held separate and distinct from the per diem allowance for services and mileage of such members provided by the constitution." It will be recalled that Section 29, Article IV, of the constitution as originally adopted provided that the members of the legislative assembly "shall receive for their services a sum not exceeding three dollars a day from the commencement of the session," but not to exceed "one hundred and twenty dollars for * * * any one session," and that they "shall also receive the sum of three dollars for every twenty miles they shall travel in going to and returning from their place of meeting, on the most usual route." The court, in an opinion by Mr. Justice BELT, held that "the constitution plainly interdicts" the appropriation of funds authorized by the legislative assembly. The decision was put upon two grounds, first, that such an allowance was for personal expenses of the legislator and was impliedly prohibited by the provision in the constitution for an allowance of mileage, which was in the nature of a personal expense payable directly to the legislator, and, second, that, being an allowance

for personal expense, that is, reimbursement for subsistence and so forth rather than for legislative expense, e. g., the employment of secretaries, the purchase of stationery, postage, and the like, it amounted to a provision for compensation expressly prohibited by the constitution. Because of its direct bearing on the question before us, we quote from the opinion relative to the first ground:

"Counsel concede there is a plain and specific constitutional limitation against additional compensation, but it is argued there is no limitation, express or implied, relative to expenses. The mileage of 'three dollars for every twenty miles' allowed in going to and returning from the capital [sic] was in the nature of a personal expense paid directly to the legislator. Having thus enumerated this item of personal expense, we think there is a strong implication against the allowance of additional personal expenses. If the framers of the constitution intended to allow other personal expenses, such as room rental and meals, it is reasonable to assume that provision would have been made therefor. The maxim, 'expressio unius est exclusio alterius,' applies." 132 Or at 179.

The significance of *Jones v. Hoss* with reference to the present case lies in the ruling that a provision in the constitution for allowance of mileage to members of the legislature is an implied limitation on the power of the legislature to provide for any different or additional allowance for personal expenses, notwithstanding the absence of an express limitation in that regard.

While, in some of the cases cited and relied on by this court in *Jones v. Hoss,* as well as others not there cited, constitutional provisions were involved expressly limiting the authority of the legislature to change the compensation therein provided for, yet in

others, although there was no such express limitation, statutes providing for the allowance of expense money to members of the legislature not provided for in the constitution were held unconstitutional. In *Peay v. Nolan,* 157 Tenn 222, 7 SW2d 815, 60 ALR 408, the applicable constitutional provision, Article 2, § 23 of the constitution of Tennessee, provided:

> "The sum of four dollars per day, and four dollars for every twenty-five miles traveling to and from the seat of government, shall be allowed to the members of each general assembly elected after the ratification of this Constitution, as a compensation for their services. But no member shall be paid for more than seventy-five days of a regular session, or for more than twenty days of any extra or called session, or for any day when absent from his seat in the Legislature, unless physically unable to attend. The senators, when sitting as a court of impeachment, shall each receive four dollars per day of actual attendance." 157 Tenn at 229.

The only express limitation in this section is upon the number of days of a session for which a member may be paid. There is no such express limitation upon the amount of compensation. The court said:

> "The cases holding that compensation fixed by statute, without specific provision for expenses, limits the amount a public official may receive, are inapplicable because there the right to an allowance for official expenses is dependent upon whether the statute authorizes it, as indicated in Whitthorne v. Turner, 155 Tenn., 303. Here the controlling question is whether the Constitution imposes a restraint, without which the Legislators, under the plenary power, may provide for official expenses.
>
> "The rule is well stated in 29 Cyc., 1427-1429, as follows:
>
> " 'Where the compensation is fixed by the Con-

stitution, or where there is a constitutional pro-
vision prohibiting such change during the term of
an incumbent, no change of salary during such
term is permissible. . . . Such limitations do not
affect provision for expenses, except that use may
not be made of a power to increase an allowance
for expenses so as to increase the compensation
received by an officer.'

"Constitutional provisions which expressly or
by implication prohibit the increase or decrease of
compensation of officers are controlled by a sound
public policy, and the principle upon which they
rest cannot be ignored, nor may their requirements
be evaded. Article 2, § 23, expressly fixes the
compensation of members of the General As-
sembly. By implication it carries a restraint
against any action to the contrary (Keith v. Fund-
ing Board, 127 Tenn., 451), hence forbids any
enactment that would either directly or indirectly
increase or diminish the compensation therein
fixed." 157 Tenn at 231.

An earlier Tennessee case, *State ex rel Weldon v.
Thomason,* 142 Tenn 527, 221 SW 491, reached a
different result by placing a different construction
upon the nature of the allowance for expenses. But
the court, nevertheless, recognized the same rule of
constitutional interpretation announced in . *Peay v.
Nolan.* The court said:

"It is, of course, to be conceded at the outset
that the appropriation made is unconstitutional
and void, if the same can by proper construction
be held to be an effort on the part of the Legis-
lature to increase the compensation of the mem-
bers of that body beyond the amount mandatorily
fixed by section 23, art. 2, of the Constitution. By
all rules of constitutional interpretation the
amount therein designated as compensation to the
legislators is to be deemed a direct limitation upon
the power of the Legislature to make any other or

different allowance for that purpose; it is the mandatory and conclusive direction of the people upon the subject, to alter which every branch of the government is equally powerless. It is also well settled that the acceptance of public office at a fixed salary precludes the allowance of a greater or additional amount." 142 Tenn at 533.

The constitution of California formerly provided, in Article IV, § 23:

"The members of the legislature shall receive for their services the sum of one hundred dollars each for each month of the term for which they are elected, to be paid monthly in the even numbered years and to be paid during the regular legislative session in the odd numbered years at such times as may be provided by law and mileage to be fixed by law, * * * such mileage not to exceed five cents per mile." 24 Cal2d at 924.

In *Collins v. Riley*, 24 Cal2d 912, 152 P2d 169 (decided after *Jones v. Hoss*), the court sustained an act of the legislature providing for payment to its members of "their actual necessary traveling expenses" in addition to their salaries. The court construed "necessary traveling expenses" to mean a member's actual living expenses when attending a session of the legislature, and sustained the statute on the theory, rejected by this court in *Jones v. Hoss,* that the provision for the allowance of mileage in the constitution did not limit the power of the legislature to provide for reimbursement of the members of the legislature for other and different expenses incurred. Mr. Justice Edmonds wrote a vigorous dissenting opinion, in which Mr. Justice Curtis concurred, but there was no division in the court upon the proposition that the legislature had no power to alter a

legislator's compensation as fixed by the constitution. As to this, the court said:

> "The proper construction of section 23 is that the provisions for payment of $100 per month and mileage 'not to exceed five cents per mile' are *limitations* upon the amounts which may be allowed for the purposes specified. Hence, since this portion of section 23 is not a grant of power, but a limitation, and since only two restrictions are mentioned, the doctrine of *expressio unius* can only operate to exclude additional limitations, thereby leaving the Legislature free to act." 24 Cal2d at 916.

This decision is cited by the relator in support of his position. In our opinion, it sustains the position of the defendant.

In Opinion of the Justices, Supreme Court of New Hampshire, 95 NH 533, 64 A2d 204, 205, the court dealt with a constitutional provision of that state (Part Second, Art. 15) reading:

> "The presiding officers of both houses of the legislature, shall severally receive out of the state treasury as compensation in full for their services for the term elected the sum of two hundred and fifty dollars, and all other members thereof, seasonably attending and not departing without license, the sum of two hundred dollars exclusive of mileage: *provided however,* that when a special session shall be called by the governor, such officers and members shall receive for attendance an additional compensation of three dollars per day for a period not exceeding fifteen days and the usual mileage." 95 NH at 534.

The court considered three "methods" that had been employed in passing upon the validity of a legislative allowance for expenses not provided for in the consti-

tution. Of these, it gave its approval to the first method as follows:

> "The first method considers a constitutional provision respecting legislative compensation to be a limited grant of power which by implication withholds any power to provide allowances directly or indirectly, beyond the amounts or for purposes other than those expressly permitted. Accordingly, by the weight of authority it has been held that the Legislature has no power to appropriate sums for the personal expenses and uses of legislators in excess of or in addition to the compensation and allowance for expenses fixed by the Constitution. 50 A.L.R. 1238; 60 A.L.R. 408, 416. Recent cases so holding include *Ferris* v. *Auditor General,* 318 Mich. 528; *Advisory Opinion to the Governor,* 156 Fla. 48; In re advisory Opinion, 227 N.C. 705." 95 NH at 534.

Another case relied on by the relator is *State ex rel Todd v. Yelle,* 7 Wash2d 443, 110 P2d 162 (1941). This decision overrules *State ex rel Banker v. Clausen,* 142 Wash 450, 253 P 805 (1927), which was one of the cases cited by this court as authority in *Jones v. Hoss.* The section of the constitution of Washington providing for legislator's pay and mileage was ambiguous in that the provision for mileage could be construed either as compensation or an allowance for expenses. In the Banker case, the court held in a five to four decision that it was a provision for expenses and that no further provision for that purpose was permissible under the rule *expressio unius est exclusio alterius.* In 1941, fourteen years after the decision in the Banker case, the court took a different view of this question. The same provision of the constitution fixing the compensation and mileage of the legislature was in effect. The constitution also prohibited, as it had from its adoption, the in-

creasing or decreasing of the compensation of a state officer during the term for which he was elected. The legislature appropriated money to pay the expense of subsistence and lodging of its members. The court held the act valid and refused to follow the reasoning of this court in *Jones v. Hoss*. But it is of significance to our present case that the court gave its full adherence to a portion of the opinion in the Banker case which bears upon the question here. The court said:

"In approaching the problem, in so far as raised by § 23 of Art. II, we adopt the analysis made by the five judges who signed the majority opinion in the *Banker* case:

" 'There are, of course, no words of express limitation in § 23 of article II, and it is our duty to determine what was meant by those who drew the provision nearly 40 years ago. Relator earnestly contends that its authors meant that the legislature should receive five dollars per day and ten cents per mile as compensation, while the respondent just as earnestly contends that five dollars per day was intended as compensation for services, and the mileage was intended as an allowance for expenses. If the first construction be the correct one, then, as the constitution allowed nothing for expenses, the rule of *expressio unius est exclusio alterius* does not apply, and the legislature may properly act in the matter, but if the respondent is right and the constitution allows ten cents per mile as expenses, the *exclusio* rule does or may apply, and. if it does, the power of the legislature is thereby limited.' " 7 Wash2d at 452.

The opinion in the Todd case then said that the justices who concurred in it (there were two dissenters) were strongly of the opinion that the provision for compensation for services in the constitution included the allowance for mileage, and that at

any rate the difference of opinion in the court as to the meaning of the constitutional provision was so marked as to make the meaning uncertain, and in that posture of affairs it would not be proper to apply the *expressio unius* maxim to the case. Thus, while the decision in the later case is, to some extent, in conflict with what we have held on a similar question, it does concede that where the constitution unambiguously fixes an allowance of expenses for the legislature, that body is without power to make any further provision for that purpose.

*Jones v. Hoss* has the support of the "numerical majority" of the courts which have passed on the question there presented. 5 ALR2d 1190. But decisions of this kind, of which there have been many, involving appropriation of money for personal expenses, not only of the legislature, but of other state officers (see Annotation, 5 ALR2d 1182-1225), do not reach the immediate question. Insofar as they hold, as does *Jones v. Hoss,* that the application of the maxim *expressio unius est exclusio alterius* precludes the legislative allowance of personal expenses other than those specified in the constitution, they are authority against the contention of the relator in this case. But it does not follow that the decisions of those courts which have taken a different view of the personal expense question support the proposition that the legislature has the power, without express authority, to change the *amount,* either of compensation or of personal expenses, as fixed by a constitution in mandatory terms. Indeed, in none of the scores of cases involving expenses of legislators and other officers reviewed in the annotation above referred to or which we have found elsewhere, does it appear that any legislature has ever had the hardi-

hood to attempt a frontal assault of that sort on a constitutional mandate. All that has been done is to provide for the allowance of expenses of a different kind or for a different purpose than those specifically mentioned in the constitution. The question has usually been: Is the allowance to be construed as compensation, and therefore violative of a limitation on the power of the legislature to increase the constitutional compensation, whether that limitation be in express terms or implied from the very fact that the people, speaking through their constitution, have fixed the compensation? And some of the courts which have upheld such personal expense legislation have, as we have shown by quotations from their opinions, expressly recognized that the amount of compensation fixed by the constitution is beyond the power of the legislature to disturb, even though no such limitation is expressed.

In accord with this view, it is stated in 67 CJS 340, Officers § 94: "An amount fixed by the constitution as the compensation of an officer is to be deemed a direct limitation upon the power of the legislature to make any other or different allowance for that purpose." In Throop on Public Officers, a recognized authority, it is said at page 439: "Where the compensation of an officer is fixed by the constitution, the legislature can not increase or diminish it." In *State ex rel Polley v. Anderson,* 31 SD 261, 140 NW 736, the court held that, since the constitution did not fix the time or mode of paying the salary of an officer fixed by the constitution, the legislature had discretion in those matters, but it prefaced its discussion with the statement, "It must be conceded that the Legislature is without power to either increase or diminish any salary fixed by the Constitution." 31

SD at 273. In *Tenpenny v. Cannon County,* 180 Tenn 618, 623, 177 SW2d 817, the court, in passing on the validity of an act of the legislature relating to a statutory office, distinguished the case by stating, "When the Constitution fixes the compensation, it is of course beyond Legislative control."

In *State ex rel Roberts v. Weston,* 4 Neb 216, the court held that, where the constitution fixed the salary of an officer and provided that "The auditor shall draw the warrants of the state quarterly" therefor "which shall be paid out of any funds not otherwise appropriated," this amounted to an appropriation by law of the amount necessary to pay such salary and no legislative act was necessary. The court said, at page 219:

> "He is holding the office of attorney general of the state, which, at the time of his election, and until the taking effect of the new constitution, was a purely statutory office, depending for its existence, and continuation, upon the will or caprice of the legislature. But, on the first day of November it became a constitutional office, and the tenure of the incumbent, as well as his compensation, were made independent of, and placed beyond the reach of the legislature, and now rest on the solid foundation, and are under the protection, of the paramount law."

We would not have thought it necessary to set forth our views at such length in this opinion, were it not for the decision of this court in *Jory v. Martin,* supra, and certain *dicta* therein and in *State v. Cochran,* supra. At the time of the decision of *Jory v. Martin* (1936), Art. XIII, § 1 of the constitution (repealed in 1956) fixed the salaries of the governor, the secretary of state, the treasurer of state, and the judges of the supreme court. The section provided in

part: "The governor shall receive an annual salary of fifteen hundred dollars." In 1927 the legislature passed an act fixing the salary of the governor at $7,500 per annum. The court, relying on the reports of the debates in the constitutional convention, on matters considered pertinent as contemporaneous legislative construction, and on the public inconvenience which it was thought would be caused by limiting the salary of the governor of a great state in the year 1936 to the paltry sum of $1,500 per year, held that the legislature had not exceeded its powers. The above quoted provision of the constitution was deemed ambiguous because it contained no express words of limitation on the power of the legislature. The court said:

"Plaintiff contends that there is no ambiguity in the language: 'The governor shall receive an annual salary of fifteen hundred dollars'. The uncertainty, it will be noted, is not in the words or figures used in fixing the amount but as to whether, in fixing that amount, it was the intention to limit and restrict the power of the legislature to increase or decrease that amount." 153 Or at 303.

Whatever might be said of the soundness of the court's conclusion, it is necessary for us to express our disagreement with the *dicta* to which we have referred, for, as we view them, they go too far in applying the rule that limitations on legislative power in a state constitution must be either expressed or clearly implied. By way of argument, the court, in *Jory v. Martin*, referred to Article IV, § 29, which at that time provided that "The members of the legislative assembly shall receive for their services a sum not exceeding three dollars a day", etc., and said:

"* * * The reason, of course, for the express prohibition in the one case and not in the other

[that is, Art XIII, § 1], \* \* \* obviously is that, in the absence of such prohibition, the legislature, by its own action alone, could increase the compensation of its members to any amount desired, while no increase could be obtained in the salaries of the officers mentioned in section 1 of Article XIII, except by legislative enactment." 153 Or at 283.

This process of reasoning apparently originated with *State v. Cochran,* in which the court, referring to Article IV, § 2, providing that the number of members of the senate and the house shall not be increased until 1860, and to the section regarding legislative compensation, said:

"\* \* \* Why employ these restrictions, if it were sufficient merely to say that the Senate shall consist of a certain number of members and the House of a certain number, and their their [sic] compensation shall be $3 per day? It is manifest that these restrictive words were employed because the constitutional convention knew that every restriction and prohibition in a state constitution must be clearly stated, and that the law-making department has plenary power, except as restrained, either expressly or by clear implication by constitutional prohibitions." 55 Or at 189.

We may observe in passing that in the Cochran case, which dealt with the power of the legislature to increase the number of judges of this court from three to five, there were ample grounds for holding, as the court did, that the legislature had that power, without going to unreasonable lengths in drawing inferences from other provisions of the constitution to support its conclusion. Thus, the court, in order to illustrate the proposition that "every restriction and prohibition in a state constitution must be clearly stated", etc., referred to numerous provisions of Article I, the

Oregon Bill of Rights, which are couched in negative language, as, for example, "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments be inflicted." Art I, § 16, Constitution of Oregon. The bills of rights of the Oregon Constitution and the other states, as well as of the Constitution of the United States, which is the common source of the former, are "Thou shalt not" commandments addressed to the legislature and the other departments of government, designed to prevent governmental interference with rights and freedoms which are the heritage of the American people. The fact that they are phrased in the negative, the only natural way in which to phrase them, to us has no significance in the consideration whether a constitutional provision fixing the salaries of state officers is a limitation on legislative power in that regard.

Again, the court took as an illustration Article II, § 2, regarding the qualifications of voters, which is set forth earlier in this opinion. The court said:

> "Now, under the construction here contended for by plaintiff, this language would exclude from the benefits of suffrage every person other than white males, but, recognizing that an express limitation was necessary to exclude negroes and Chinamen, Section 6 was added, as follows: 'No negro, Chinaman, or mulatto shall be entitled to suffrage.'" 55 Or at 188.

There is indication in the debates in the constitutional convention that Section 6 may have been adopted because of uncertainty in the minds of some of the delegates as to just what a "white" person might be. See Carey, A History of the Oregon Constitution, pages 321-322, 324. However that may be, Article II, § 2 did not expressly exclude from the suffrage per-

sons who had not paid a poll tax. Yet this court, in *Livesley v. Litchfield,* supra, as we have seen, held that payment of a poll tax could not, agreeably to the constitution, be made a qualification for voters. Again, the section contains no express limitation upon the legislature's power to grant the suffrage to women; but no one, we believe, would suggest that the legislature ever had that power. It was a power left remaining in the hands of the people and not exerted in behalf of women's suffrage until the adoption of a constitutional amendment of Article II, § 2 in 1912. Yet the logic of the discussion in *State v. Cochran* would lead to the conclusion that without an express limitation the legislature could have stricken "male" from the section.

Coming now to what was said in *State v. Cochran* relative to the authority granted in Article IV, § 2, to change the numbers of senators and representatives, we think it clear that if the section had provided: "The Senate shall consist of 16 and the representatives of 34 members" and stopped, there would have been no power in the legislature either to increase or decrease the numbers of the two houses. The remainder of the section, prohibiting an increase until the year 1860 was, in effect, a grant of power which otherwise would have been withheld.

Other provisions of the constitution, such, for example, as Article IV, § 12, that "Two-thirds of each house shall constitute a quorum to do business," and Article IV, § 25, that "A majority of all the members elected to each house shall be necessary to pass every bill or joint resolution," might be cited as illustrations of limitations on legislative power without the use of express words of limitation.

If the *dicta* which we have quoted from *Jory v.*

*Martin* and *State v. Cochran* regarding Article IV, § 29, in its original form must be accepted as correct statements of the law, then there is nothing left for the court to do in this case but to issue a peremptory writ of mandamus directing the defendant to honor the relator's demand for additional pay. We do not believe that they are correct, nor, as we have attempted to show, that they stand up under the test of analysis or are supported by the authorities.

As stated earlier in this opinion, the relator makes a point of the fact that the 1950 amendment abandons the words "not exceeding," theretofore a part of Article IV, § 29, and argues from this omission that there must have been an intention on the part of the people to remove the limitation on legislative authority previously existing. If this change introduces an ambiguity into the amendment, then we are entitled to look into the historical background against which it was adopted, and contemporaneous construction. Ten times prior to 1950 the people had voted on measures submitted by the legislative assembly to increase legislative compensation, and once on a similar proposal incorporated in a lengthy initiative measure. Twice since 1950 similar proposals have been submitted by the legislative assembly to the people and rejected by them. Citations to the measures are printed in an appendix to this opinion. Twice the legislative assembly has sought and been denied by the people the power to fix the compensation of its members, the first time in 1936, and the second in 1954. The 1936 measure provided: "The members of the legislative assembly shall each receive such compensation as may be provided by law." HJR 25, Oregon Laws 1935, p 849. It was rejected at the special election held January 31, 1936, by a vote of

184,332 to 28,661. See Oregon Laws 1937, p 6. The 1954 measure provided: "The compensation of members of the legislative assembly shall be prescribed by law." Oregon Laws 1953, 1420-1421. This measure was rejected at the general election held November 2, 1954, by a vote of 296,008 to 216,545. See Oregon Laws 1955, p 6.

Moreover, at the 50th session of the legislative assembly, Senate Joint Resolution No. 25 was adopted for submission to the people ·of an amendment to Article IV, § 29, so as to provide that the members of the legislature shall receive for their services salaries of $175 per month each. If the amendment should be approved it would amount to a ratification by the people of the statute enacted at the same session, the constitutionality of which is here in issue. This measure will be voted on at a special election on the third Friday of May, 1960. See Oregon Laws 1959, pp 1519-1520.

One further matter is worthy of mention. This court has recognized in a number of cases that arguments in the official Voters' Pamphlet relative to measures submitted to the people may be resorted to as an aid to construction. *City of Portland v. Bingham,* 209 Or 575, 583, 307 P2d 492; *School Dist. 1, Mult. Co. v. Bingham et al,* 204 Or 601, 630 (dissenting opinion), 283 P2d 670, 284 P2d 779; *Sprague v. Fisher,* 184 Or 1, 86, 197 P2d 662, 203 P2d 274; *Allen v. Multnomah County,* 179 Or 548, 562, 173 P2d 475; *Eugene School Dist. No. 4 v. Fisk,* 159 Or 245, 256-257, 79 P2d 262; *Jory v. Martin,* supra, 153 Or at 302. A similar view is taken in California. *Carter v. Com. on Qualifications, etc.,* 14 Cal2d 179, 185, 93 P2d 140; *People v. Ottey,* 5 Cal2d 714, 723, 56 P2d 193. Discriminating and cautious use must be made of such

material because of its partisan character. We think, however, that in the present instance it is proper to refer to the argument in favor of the 1950 amendment of Article IV, § 29, appearing at page 7 of the official Voters' Pamphlet regarding measures for the regular general election, November 7, 1950. The argument was prepared and signed by a joint committee of the legislative assembly consisting of one senator appointed by the president of the senate, and two representatives appointed by the speaker of the house, pursuant to Joint Resolution No. 5 submitting the amendment to the voters. See Oregon Laws 1949, p 1022.

The argument is a clear and able statement of the reasons why the compensation of legislators should be increased. It contains not the faintest hint of a purpose to confer upon the legislative assembly the power to fix its own compensation. The only statement relative to the subject is the following:

"The Constitution of Oregon has *justly* reserved unto the people the right to set the compensation of the members of the legislative assembly." (Italics added.)

Thus, it is apparent that the legislative assembly, by seeking in 1954 the power to fix the compensation of its members, by submitting to the people in each of the years 1955, 1957 and 1959 a constitutional amendment increasing their compensation, and by the above quoted statement in the official Voters' Pamphlet made by the duly authorized agents of the legislative assembly, has placed upon the 1950 amendment a construction contrary to that which we are now urged by the relator to adopt.

In *Jones v. Hoss,* supra, 132 Or at 178, the court said:

"In construing a constitutional provision we seek to ascertain and give effect to the intent of the framers and of the people who adopted it. Words which have no well established technical or legal signification are to be given their plain, natural and ordinary meaning. A constitution is dependent upon ratification by the people. Its language should, therefore, be considered in the sense most obvious to the common understanding of the people at the time of its adoption. It is no time to indulge in subtle or ingenious reasoning. The constitution must be viewed in the light of the spirit of the times when it was enacted. 6 R.C.L. 51. * * *"

In language as clear and understandable as it is possible to use, Article IV, § 29 provides:

"The members of the legislative assembly shall receive for their services a salary of $600 per annum payable as provided by law."

We think that the people of this state, in adopting this amendment, had the right to consider and must have considered that they were exercising, and not surrendering, their accustomed and frequently invoked power to fix the compensation of the members of the legislative assembly. If those who drafted the measure had desired or intended to submit to the people the question of giving up their control over this subject, we have no doubt that they would have done so in words similar to those used when unsuccessful attempts to accomplish that purpose were made on two previous occasions, or, in any event, in other words so unambiguous as to clearly convey that meaning to the ordinary citizen.

We hold, therefore, that ORS 171.071 is unconstitutional and void, that the demurrer to the writ must be sustained and the mandamus disallowed.

# APPENDIX

The following is a list of elections prior to 1950 at which the people voted on proposals to increase the compensation of members of the legislative assembly, together with the amounts proposed. All such amendments were rejected except that voted on at the election November 3, 1942.

| Date of Election | Nature of Amendment |
|---|---|
| June 1, 1908 | Sum of $400 for each regular session and $10 per day for each day of extra session, extra sessions not to exceed 20 days. HJR No. 11, Oregon Laws 1907, p 503. |
| Nov. 8, 1910 | Annual salary of $350. See Voters' Pamphlet for Nov. 8, 1910, General Election, p 195. |
| Nov. 3, 1914 | Five dollars for each actual work day, not to exceed $300 for each regular session, or $125 for an extra session. HJR No. 14, Oregon Laws 1913, p 805. |
| June 4, 1917 | Not exceeding $6 per day or $300 aggregate for a regular session. Six dollars per day for extra session, no extra session to last more than 20 days. SJR No. 25, Oregon Laws 1917, p 941. |
| Nov. 2, 1920 | Not exceeding $300 for regular session, regular sessions not to exceed 60 days. Five dollars per day for extra session, extra sessions not to exceed 20 days. HJR No. 8, Oregon Laws 1919, p 842. |
| June 7, 1921 | Not exceeding $5 per day, limit of 60 days for regular session, limit of 20 days for extra session. SJR No. 6, Oregon Laws 1921, p 815. |

| *Date of Election* | *Nature of Amendment* |
|---|---|
| June 28, 1927 | Not exceeding $10 per day, limit of $400 for regular session. Ten dollars per day for extra session, limit of 20 days for extra session. SJR No. 1, Oregon Laws 1927, p 703. |
| Nov. 4, 1930 | Shall receive for their services and personal expenses, the sum of $500 for any two years. HJR No. 25, Oregon Laws 1929, p 797. |
| Nov. 8, 1938 | Shall receive a sum not exceeding $8 per day. Limit of 50 days for regular session and 20 days for extra session. SJR No. 13, Oregon Laws 1937, p 860. |
| Nov. 5, 1940 | Shall receive a sum not exceeding $8 per day. Limit of 50 days for regular session and 20 days for extra session. HJR No. 18, Oregon Laws 1939, p 1265. |
| Nov. 3, 1942 | Shall receive a sum not exceeding $8 per day. Limit of 50 days for regular session and 20 days for extra session. SJR No. 3, Oregon Laws 1941, p 900. |