16103

SCROGGIE v. BATES *ET AL.*
(48 S. E. (2d) 634)

*Mr. A. W. Holman,* of Columbia, for Appellants,

*Mr. C. T. Graydon,* of Columbia, for Respondent, *O. T. Wallace,*

July 8, 1948.

PER CURIAM.

This action was commenced in the Court of Common Pleas for Richland County, South Carolina, by James B. Scroggie, a citizen and taxpayer, for the purpose of securing a temporary and permanent injunction to restrain the State Treasurer from paying to each member of the General Assembly the sum of Seven Hundred ($700.00) Dollars pursuant to the provisions of the Act of the General Assembly known as the Deficiency Appropriation Act of 1947, Act No. 287, R522, approved May 10, 1947, 45 St. at Large, p. 706 upon the ground that this provision of the Appropriation Act was in violation of Sections 9 and 19 of Article III of the Constitution of South Carolina. Fred L. Hiers, Representative, and O. T. Wallace, Senator, were made Respondents as representatives of the General Assembly, Eldredge C. Rhodes, Comptroller General, was made a Party-Respondent, but it does not appear that he was served with the summons and petition or has made any appearance in the case.

The State Treasurer filed an answer and return in which he alleged that he acted in good faith in relying upon an apparently valid statute and expressed his purpose to make further payments only upon the direction of the Court in this proceeding.

Fred L. Hiers filed an answer and return in which he admitted that the sum appropriated in reality amounted to an increase in pay for each member of the Legislature, which he alleged the General Assembly had authority to make under the Constitution. He also questioned the Petitioner's right to maintain the suit.

O. T. Wallace moved to strike substantially all of the material allegations of the petition and interposed a demurrer on the ground that no cause of action was stated and that the Petitioner had no capacity to sue.

An injunction, *pendente lite,* was issued by Honorable G. Duncan Bellinger on July 7, 1947, at which time the Respondent, O. T. Wallace, had not entered an appearance, the time for answering not having expired. The motion to strike, the demurrer, and the answers and returns were heard before Judge Marvin M. Mann, who, after full argument, and treating the pleadings filed by the State Treasurer and Representative Hiers as raising only questions of law, granted the motion to strike and sustained the demurrers, and thereupon rendered a final judgment upon the pleadings. Notice of intention to appeal was duly given.

The certificate of disqualification filed by all members of the Court has resulted in the naming of a Special Court by the Governor of South Carolina under the provisions of Article 5, Section 6, of the Constitution.

Since the question here is whether the challenged provisions of the 1947 Deficiency Appropriation Act conflict with the State Constitution, we approach the issue recognizing that the provisions of the State Constitution are not a grant but a limitation of legislative power, and that a proper respect for the actions of a coordinate branch of the government requires that every reasonable doubt must be resolved in favor of the validity of the statute.

When a statute is challenged as not conforming to the Constitution, it is the function of the Court to lay the appropriate provisions of the Constitution and of the statute side by side and to decide whether the latter is prohibited by the former. *U. S. v. Butler,* 297 U. S. 1, 62, 36 S. Ct. 144, 80 L. Ed. 477, 102 A. L. R. 914. If the statute does not contravene the Constitution, our task

has been completed. The Court's opinion as to the wisdom of the law must be excluded. The Court has no concern here as to whether the pay of Legislators is inadequate or excessive. *O'Shields v. Caldwell*, 207 S. C. 194, 209, 35 S. E. (2d) 184; *Osborn v. Ozlin*, 310 U. S. 53, 66, 60 S. Ct. 758, 84 L. Ed. 1074.

That part of the Deficiency Appropriation Act of 1947 which is here in question reads as follows:

"Section I: That Act No. 601 of the Acts of the General Assembly of 1946, being the General Appropriations Act for the Fiscal Year 1946-47, be, and the same is hereby, amended as follows: * * *

"Provided Further, That each member of the Senate and House of Representatives shall be paid Seven Hundred ($700.00) Dollars as official expenses in connection with the 1947 session of the General Assembly and work between sessions, the same to be in addition to any other expense payments provided herein, and there is hereby appropriated the sum of One Hundred and Nineteen Thousand ($119,-000.00) Dollars for the payment thereof. * * *"

This Act further provides in Section 43, Sub-Section i, that:

"Any appropriation in this Act under the designation, 'Official Expenses' may be paid without the required itemization."

The Petitioner contends that this appropriation is in violation of Sections 9 and 19 of Article III of the Constitution of South Carolina, which provide as follows:

"Section 9. Sessions of the General Assembly.—The annual session of the General Assembly heretofore elected, fixed by the Constitution of the year Eighteen hundred and Sixty-eight to convene on the fourth Tuesday of November, in the year Eighteen hundred and ninety-five, is hereby postponed, and the same shall be convened and held in the city of Columbia on the second Tuesday of January, in the year

Eighteen hundred and Ninety-six. The first session of the General Assembly elected under this Constitution shall convene in Columbia on the second Tuesday in January, in the year Eighteen hundred and Ninety-seven, and thereafter annually at the same time and place. Should the casualties of war or contagious disease render it unsafe to meet at the seat of government, then the Governor may, by proclamation, appoint a more secure and convenient place of meeting. Members of the General Assembly shall not receive any compensation for more than forty days of any one session: Provided, That this limitation shall not affect the first four sessions of the General Assembly under this Constitution."

"Section 19. Mileage—increase of per diem—extra session.—Each member of the General Assembly shall receive five cents for every mile for the ordinary route of travel in going to and returning from the place where its sessions are held; no General Assembly shall have the power to increase the per diem of its own members; and members of the General Assembly when convened in extra session shall receive the same compensation as is fixed by law for the regular session."

In approaching a decision of the matter before the Court, it may be well to review the previous opinions of the Supreme Court of this State wherein the meaning of the provisions of the quoted sections of the Constitution have been adjudicated. It appears from the record that the Petitioner now before the Court brought a similar action in the original jurisdiction of the Supreme Court of this State in which he challenged the constitutionality of an appropriation made in 1931 in the following language: "Senators (salaries and expenses) $31,160.00," and "Representatives (salaries and expenses) $82,380.00." *Scroggie v. Scarborough, State Treasurer,* 162 S. C. 218, 160 S. E. 596, 598. It appeared by mathematical calculation in that case that this appropriation provided expense money of Two Hundred Sixty ($260-

.00) Dollars more than the per diem of members of the General Assembly previously fixed by statute. The case was heard in the original jurisdiction of the Supreme Court upon the pleadings. The Court thus summarized the limitations upon the power of the Legislature contained in the quoted sections of the Constitution.

"(1) The Legislature may not provide compensation for its members for more than forty days in each session (article 3, § 9). (2) It cannot increase the per diem of its own members (article 3, § 19). (3) It cannot provide more than five cents per mile as mileage for its members (article 3, § 19). (4) It cannot provide a different compensation for its members when convening in extra session, from that provided by law for the regular session (article 3, § 19). (5) It cannot grant extra compensation, fee, or allowance, to any public officer after service rendered, or authorize payment of any claim under any contract not authorized by law. (article 3, § 30)."

After outlining these limitations, the Court stated:

"* * * if it should be found in the case at bar that the effect of the appropriation in question is to increase the compensation of members of the General Assembly, such appropriation would be clearly unconstitutional."

From a careful reading of the opinion and the reasoning of the Court in this case, we may deduce therefrom the following rules of interpretation and principles of law governing in the case now before the Court: (1) A statutory enactment of legislation by the General Assembly is presumed to be within its constitutional powers and the burden is upon the Petitioner to show by any proper means that an appropriation such as the one before the Court was for personal expenses and not official expenses and the Courts are available to him to present proof that the apropriation was in fact an increase in compensation. (2) If it should be found that the effect of the apropriation in question is to increase the compensation of members of the General

Assembly, such apropriation is unconstitutional. (3) That the Court may determine whether or not an appropriation designated as expense money is in such amount as to show on its face without the aid of extrinsic facts and circumstances that was made to defray personal expenses rather than official expenses. (4) Although it is not so stated in the opinion, we add that the Court may also take into consideration the language used in the statute under consideration as well as the amount of money appropriated in arriving at a decision as to its true meaning and effect.

The next case wherein the Supreme Court had under consideration the same provisions of the Constitution is that of *Godfrey v. Hunter, Clerk of the House of Representatives,* 176 S. C. 442, 180 S. E. 468, 469. In that case, the General Assembly, in providing for compensation of the members of the General Asembly for the extra session in 1931, passed an Appropriation Bill which provided: "that there is hereby appropriated from the State Treasury a sufficient sum of money to bear the *expenses* (italics added) of the extraordinary session of the General Assembly convened September 14, 1931, in accordance with the following schedule: * * * Each member of the General Assembly shall receive as *an expense allowance* (italics added) the sum of $10.00 per day for each and every day's service rendered." Act Sept. 24, 1931, 37 St. at Large, p. 1097.

The Petitioner in that case made the claim that the Ten ($10.00) Dollars per day appropriated as an expense allowance was expense money and that under the Constitution he was entitled to the same compensation for the extra session that was provided in the statute for the regular session, to-wit: Four Hundred ($400.00) Dollars per member, this to be in addition to the apropriation for an expense allowance. In construing the language used in this appropriation Act, the Supreme Court held that the words "as an expense allowance the sum of $10.00 per day for each and every day's service rendered," should be interpreted to mean the

member's per diem compensation at the rate of Four Hundred ($400.00) Dollars per session for forty days and that the petitioner was entitled to Ninety ($90.00) Dollars for nine days extra session compensation. The Supreme Court gives its construction of the language used in the statute as follows:

"Petitioner was a member of the Free Conference Committee on the part of the House, to whom was referred the Appropriation Bill hereinabove quoted from, and signed the Free Conference Report fixing the compensation of the members at $10.00 per day, although this compensation is referred to in the said bill, afterwards act, as an expense allowance, but even a casual reading thereof will disclose that it was the intent of the Legislature that the $10.00 per day was intended as the compensation of the members.

After reciting the sections of the Constitution and the provisions relative to expense payments to members of the General Assembly the Court makes this observation:

"Section 9 of article 3 of the Constitution fixes the number of days for which members may receive compensation at not more than 40 for any one session. The framers of the Constitution knew from experience and observation that regular sessions of the General Assembly always lasted for at least 40 days, and that 40 days should be sufficient in which to transact the business of the state."

Thus the Court has held that although the words used in an Act of the General Assembly were "as an expense allowance," that the real intent and meaning of these words was compensation and not expense.

Guided by the provisions of the Constitution and the interpretation and construction given by the Supreme Court of this State, let us now consider the statute here in question.

While this Court is of opinion that the Circuit Judge erred in striking many of the substantial allegations of fact from the petition, under our view of the stat-

ute it is not necessary that there be a trial upon the facts, and it would serve no useful purpose to remand the case for trial. The question here is one of law which may be decided without the aid of extrinsic facts and circumstances.

The General Assembly of South Carolina occupies a position similar to that of a trustee in handling the public funds of the people. No money may be disbursed by the Treasurer unless authorized by the Legislature. Nothing in fiduciary law is better settled than that the trustee shall not be allowed to advantage himself in dealing with the trust funds. While of course, the matter here does not in a legal sense involve a trust such as exists between individuals or corporations, the principle of trusteeship in authorizing disbursements of funds to its own members during their term of office is quite apposite. A cogent statement of this idea is found in 49 American Jurisprudence, 248. In speaking generally of the Legislature, it says:

"It is an instrumentality appointed by the state to exercise a part of its sovereign powers. In that capacity it holds the public funds in trust for the people."

Where money is appropriated by the Legislature for the benefit of its own members, it thus becomes the duty of the Court to scrutinize the statute with great care in order to determine whether or not the apropriation is constitutional. The evident purpose of that provision in the Constitution to the effect that members of the General Assembly shall not increase the per diem of its own members during their term of office was to prevent the General Assembly from fixing a compensation for themselves different from that provided by law when they offered themselves as candidates for the General Assembly. There is no prohibition in the Constitution against Legislators providing adequate compensation for the members of each House of an incoming General Assembly. The only prohibition is against voting themselves additional compensation during their term as members of that Body.

There is no question that the General Assembly may provide for the payment of expenses of its members in performing duties imposed upon them by statute as exemplified by Section 3217, Code of Laws of 1942, wherein the Chairman of the Ways and Means Committee and the Chairman of the Finance Committee of the Senate are required to sit with the Governor at all public hearings concerning the budget commencing in November of each year, and the Code provides in that connection:

"* * * They shall receive as compensation for their services seven and one-half dollars per day for the number of days actually engaged in the performance of the duties imposed by this article and their actual traveling expenses, to be audited and approved by the comptroller general."

Section 2117 provides for a standing Committee on Statutory Laws to be composed of three members of the Judiciary Committee of the Senate and three members of the Judiciary Committee of the House of Representatives, who are appointed at the first session of each General Assembly, and the following section, Section 2118, provides for the payment of the expenses of these members of the General Assembly as follows:

"* * * Each member of the committee shall receive their. (his) traveling expenses, and a per diem of ten dollars per day when actually engaged in their (his) duties, said expenses and per diem shall not exceed the sum of four hundred ($400.00) dollars, annually; which funds are hereby appropriated out of the state treasury, and shall be paid out of the state treasury by warrants drawn thereon by the comptroller general, upon warrants of the chairman of the said committee."

Section 2084 provides for the appointment of two members of the House of Representatives and two members of the Senate to serve on the Printing Committee. The following section, Section 2085, contains provisions for expenses when the Legislature is not in session, to-wit:

"* * * and for such meetings the members of the committee shall receive as compensation each a per diem of five dollars and the same mileage they received for attendance upon the sessions of the General Assembly."

Section 5786 makes the Chairman of the Committees on Education of the House and Senate members *ex officio* of the Board of Trustees of Winthrop College, and the Code provides that each of the members shall receive as compensation, "his actual expenses."

The above enactments in the Code indicate that where any statutory duty is imposed upon the members of the General Assembly when not in session, the statute carries with it a provision for the payment of official expenses or a per diem and expenses. The Act here in question provides that each member of the Senate and House of Representatives shall be paid Seven Hundred ($700.00) Dollars as official expenses in connection with the 1947 session of the General Assembly and work between sessions, the same to be in addition to any other expense payments provided therein. It further provides that payments may be made without the required itemization.

So far as this Court is able to determine from a careful examination of the Constitution and the Code of Laws of the State of South Carolina, there were no statutory duties required of any member of the General Assembly between sessions for which an official expense account may be authorized, except those for which adequate compensation and expenses are already provided, and there were no legislative duties in connection with the 1947 session which required the members of the General Assembly to do more than their customary and usual duty at the regular sessions of the Assembly.

It has been suggested in argument that Legislators might incur official expenses between sessions in the management of the affairs of the counties and other political subdivisions.

Undoubtedly, Legislative Delegations do many things in connection with their political office that are not required of them by the statutory law, but such work must be regarded as purely voluntary, and besides, the expenses thus incurred could not possibly be the same for each member in the respective counties of the State.

The reference in the statute itself to "expenses in connection with * * * work between sessions" is difficult to understand when we remember that these appropriations were only for the fiscal year July, 1946-June, 1947, that the Legislators were not elected until November, 1946, and that the General Assembly was not organized until January 14, 1947, and adjourned on May 14, 1947. Certainly, no Legislator could draw official expenses before he was elected. Since the appropriation expired June 30, 1947, the "work between sessions" is limited to the period from November 1946, when the Legislators were elected, to January 14, 1947, when the General Assembly was organized; and May 14, 1947, when they adjourned to June 30, 1947, when the appropriation expired. Such a construction seems too strained to justify the conclusion that the General Assembly intended such.

The Respondents urge as one principle of construction the thought that the General Assembly has many times in the past enacted similar appropriations for extra pay and cite in support of that contention the concurring opinion of the late Associate Justice Bonham in *Scroggie v. Scarborough, supra,* where he expressed the view that the fact that "during the last twenty-five years members of the Legislature have voted themselves extra compensation under the guise of 'expense money', and that the custom was apparently acquiesced in by the public," was one reason for holding the appropriation to be constitutional. Under no circumstances can this Court agree to the suggested proposition that by repeated violations of the Constitution, the Legislators may thus amend that instrument. The majority

of the Court evidently did not approve that doctrine, as is evidenced by the fact that it was not incorporated in the majority opinion of the Court.

In providing that each member of the Senate and House of Representatives shall be paid the same amount, that it be paid "as official expenses in connection with the 1947 session" and "work between sessions," and finally in providing that the amount appropriated "may be paid without the required itemization," as must be done in all other cases under Section 3141 of the Code, when considered all together, make the conclusion inevitable without the aid of extrinsic facts and circumstances that the real intent and purpose of the appropriation here in question was to increase the compensation or per diem of the members of the General Assembly, in violation of the Constitution of this State, and the statute in question is therefore void.

Judgment of the Circuit Court is reversed and the cause remanded to that Court with instructions to enter a permanent injunction consistent with this decision.

C. GRANVILE WYCHE, ACTING CHIEF JUSTICE, and HENRY C. JENNINGS, HARVEY W. JOHNSON, HENRY BUSBEE and DAVID W. ROBINSON, ACTING ASSOCIATE JUSTICES.