Feb. 16, 1949. } No. 3823a.

OPINION OF THE JUSTICES.

The following resolution adopted by the House of Representatives at the present session of the General Court on January 19, 1949 was received upon the same day:

"Resolved, That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:

"1. Is House Bill No. 145 entitled 'An Act relative to travel allowances for members of the General Court' constitutional?

"2. Assuming that the provision for payment of $4.00 for the first

mile of travel is in excess of the actual cost of transportation for said first mile, is said bill contrary to the constitution?

"3. Is it permissible for the General Court to enact any legislation providing for the payment to members of the General Court of sums of money in excess of the constitutional salary of $200.00 and the actual cost of transportation in traveling to and from sessions of the General Court?

"4. Does the term 'mileage' as used in Article XV, part second of the constitution include the payment of expenses of members of the General Court in addition to such actual cost of transportation?

"5. May the General Court determine what sums in its own judgment should reasonably be paid as mileage and make its own regulations for the payment of the same?

"Further resolved that the Speaker of the House transmit a copy of this Resolution and of House Bill No. 145 to the Clerk of the Supreme Court for consideration by said Court."

The following answer was returned:

*To the House of Representatives:*

The Main question for decision is whether House Bill No. 145 is in conflict with the Constitution of New Hampshire, Part Second, *Art.* 15 which is as follows: "The presiding officers of both houses of the legislature, shall severally receive out of the state treasury as compensation in full for their services for the term elected the sum of two hundred and fifty dollars, and all other members thereof, seasonably attending and not departing without license, the sum of two hundred dollars exclusive of mileage: *provided however*, that when a special session shall be called by the governor, such officers and members shall receive for attendance an additional compensation of three dollars per day for a period not exceeding fifteen days and the usual mileage." The bill is entitled "An Act relative to travel allowances for members of the General Court" and allows each member of the General Court "for travel expense the sum of four dollars for the first mile and five cents for each mile thereafter to and from his home each day of attendance." Since approximately one-half of the forty-eight states have constitutional provisions on the subject, statutory regulation thereunder has been considered by the courts of many states. Three different results or methods of approach to the problem are reflected in the decisions.

The first method considers a constitutional provision respecting

legislative compensation to be a limited grant of power which by implication withholds any power to provide allowances directly or indirectly, beyond the amounts or for purposes other than those expressly permitted. Accordingly, by the weight of authority it has been held that the Legislature has no power to appropriate sums for the personal expenses and uses of legislators in excess of or in addition to the compensation and allowance for expenses fixed by the Constitution. 50 A. L. R. 1238; 60 A. L. R. 408, 416. Recent cases so holding include *Ferris* v. *Auditor General*, 318 Mich. 528; *Advisory Opinion to the Governor*, 156 Fla. 48; *In re Advisory Opinion*, 227 N. C. 705.

The second method treats the constitutional provision as a limitation only as to matters expressly referred to and holds that additional or lump sum allowances for expenses not expressly provided for are within the power of the Legislature. Some of the jurisdictions adopting this minority view include *Collins* v. *Riley*, 24 Cal. (2d) 912; *Christopherson* v. *Reeves*, 44 S. D. 634; *State* v. *Yelle*, 7 Wash. (2d) 443. Generally these opinions are sharply divided and in at least two states the matter was finally resolved by constitutional amendment in California in 1944 and in Washington in 1948.

The third method merely presumes the statute providing for personal expenses of legislators is constitutional and refuses to examine its merits on some technical ground. This view finds little support in the authorities (*State* v. *Baker*, 74 N. D. 244) and has never been adopted in this state as a means for the Supreme Court to avoid its duty under *Art.* 74 of our Constitution to decide "important questions of law."

In answering the questions submitted, we must necessarily look to the purposes of *Art.* 15 of our Constitution which was adopted in 1889 by a vote of the people of more than three to one. For the previous century the members of the Legislature had received a small per diem and mileage at various rates of four pence, eight cents and ten cents. The relatively long legislative session of 1887 resulted in a determination to limit the amounts received under the former system and to thus limit the length of the sessions. II Pillsbury, New Hampshire, A History (1927) 620, 621; Buxton, Four Constitutional Conventions (1928) 46, 47. The minutes of the Constitutional Convention of 1889, *pp.* 84-100 indicate that the compensation allowed included personal expenses exclusive of mileage.

"The belief has been widespread that the compensation of legislators is inadequate for the public service they are called upon to

render." Our State Legislatures (The Council of State Governments 1948) 6. Since the compensation in this state is the lowest in the nation, the inadequacy is more acute. Model State Constitution (5th *ed* 1948) *p.* 27. However, it is generally agreed that, "Travel allowances should not be used to make up deficiencies in the salary paid." Walker, The Legislative Process; Law Making in the United States (1948) 156, 157. It has been pointed out in the oral arguments that House Bill 145 would increase steady attendance, tend to shorten the session and cost the state less than if it provided for a straight mileage basis of eight cents a mile for each day of attendance. Admitting these statements to be true and conceding the best motives to House Bill 145, does not guarantee its constitutionality. Mileage rates in the other forty-seven states range from five cents to twenty-two cents but there appears to be no precedent of four dollars for the first mile. The Legislature may determine any mileage rate that bears a reasonable relation to the cost of travel. Such a rate may be considered "actual cost" as used in your inquiries whether it is slightly less than or more than the amount expended by any individual legislator for mileage. See *Havens* v. *Attorney-General*, 91 N. H. 115, 120.

In view of the purpose and history of *Art.* 15 of the Constitution, we are not free to adopt the second method of approach by which a minority of states allow the Legislature to appropriate for expense moneys in addition to compensation and mileage. While the bill has more merits than appear at first blush and while we have considered possible justification for its acceptance, it is our considered judgment that it violates the language and intent of *Art.* 15 of the Constitution in granting travel expense which is neither compensation nor mileage as those terms are used in the Constitution.

In the light of the above discussion, the answer to the first, third and fourth questions is no, the answer to the second question is yes, and the answer to the fifth question is yes within the constitutional limits indicated. As to past legislative sessions nothing in this advisory opinion is to be construed as necessarily having retroactive effect. Cf. *Great Northern Ry. Co.* v. *Sunburst Co.*, 287 U. S. 358. As to future sessions the following quotation may be of assistance: "The Commission recommends that a standard mileage table be adopted by appropriate legislation, establishing a fixed table of distances from each town and ward in the state to the State House. This mileage table should be adopted before the close of the ensuing session, to be effective at the commencement of the 1951 session.

In this way, members running for election or re-election in 1950 will know exactly what mileage goes with the office." Report of the Interim Commission on Legislative Practice and Procedure. (1948) *p. 3*. (See Laws 1947, *c. 321*.)

OLIVER W. BRANCH.
FRANCIS W. JOHNSTON.
FRANK R. KENISON.
LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.

*Gardner C. Turner* (by brief and orally) *C. Murray Sawyer* and *Nathan A. Tirrell* (orally), for the House of Representatives, for the bill.

*John D. Langmuir* (orally), for the New Hampshire Federation of Taxpayers Association also for the bill.

*H. Thornton Lorimer, Francis E. Perkins* and *Thomas F. Donovan* (*Mr. Lorimer* orally), for Monitor-Patriot Co. and James M. Langley, opposed.