Argued March 14, peremptory writ ordered April 7, 1961

# STATE ex rel OVERHULSE et al v. APPLING
### 361 P. 2d 86

*Roy F. Shields,* Portland, and *Orval N. Thompson,* Albany, argued the cause for plaintiff. With them on the brief was Malcolm F. Marsh, Salem.

*Peter S. Herman,* Assistant Attorney General, Salem, argued the cause for defendant. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

O'CONNELL, J.

This is a mandamus proceeding brought to test the constitutionality of senate joint resolution No. 1

of the 51st legislative assembly which provides that legislators shall be reimbursed for legislative expenses up to specified maximum monthly amounts. The relators are two members of the legislative assembly, Boyd R. Overhulse, a senator, and Stafford Hansell, a representative. The defendant is Howell Appling, Jr., Secretary of State. Because of the public importance of the question, we took original jurisdiction.

Senate joint resolution No. 1 reads as follows:

"Whereas each member of the Legislative Assembly incurs in the performance of his official duties during a session, in addition to his personal expenses, numerous legislative expenses, including but not limited to telephone and telegraph charges, office space rental, office expenses, postage, certain office supplies and certain stationery and reference materials, which expenses must be borne by the resources of each member and which total more than $75 a month during a regular session; and

"Whereas each member of the Legislative Assembly incurs in the performance of his official duties between sessions, in addition to his personal expenses incurred while attending meetings of interim committees and performing other official duties, numerous legislative expenses, including but not limited to telephone and telegraph charges, office space rental, office expenses, postage, office supplies, stationery and reference materials, and in addition must bear the legislative expenses of stenographic assistance on official matters, which expenses must be borne by the resources of each member and which total more than $1,800 a year; and

"Whereas membership in the Legislative Assembly is unduly burdensome for many persons who do not have the resources to pay these legislative expenses incurred in the public service, in-

asmuch as members receive a small salary and, during a session, no reimbursement for personal expenses other than one payment for mileage traveled to and from the Capitol, and it is in the public interest to obtain the services of those most competent without regard to their financial resources; and

"Whereas section 29, Article IV of the Oregon Constitution does not govern reimbursement for legislative expenses; now, therefore, *Be It Resolved by the Senate of the State of Oregon, the House of Representatives jointly concurring:*

"(1) Every member of the Fifty-first Legislative Assembly shall receive reimbursement for part of his legislative expenses up to a maximum of $75 a month during the period when the Legislative Assembly is in session, upon the filing of a certified claim therefor as provided in paragraph (4) of this resolution.

"(2) Every member of the Fifty-first Legislative Assembly shall receive reimbursement for part of his legislative expenses up to a maximum of $150 a month during the period when the Legislative Assembly is not in session, in addition to any reimbursement that may be provided for personal expenses incurred in attending meetings of interim committees, upon the filing of a certified claim therefor as provided in paragraph (4) of this resolution.

"(3) Payment of the reimbursement provided by this resolution shall be made monthly or at such periods in excess of monthly periods as are designated by the member in his certified claim for reimbursement, as provided in paragraph (4) of this resolution. However, no reimbursement may be paid to any individual for any month or part thereof during which such individual was not a member of the Legislative Assembly. For the purposes of this resolution and to preserve the continuity of his legislative functions, a presiding officer of either house is considered to be a mem-

ber of the Legislative Assembly during such time that he serves as Governor during the temporary absence from the state of the Governor.

"(4) Each claimant shall file, in a form prescribed by the Legislative Fiscal Officer, claims for reimbursement that shall include a statement that the member incurred legislative expenses in excess of that amount for which reimbursement is sought during the period designated in the claim. The claim shall be submitted for approval of the presiding officer of the house of which the legislator is or was a member. Claims for reimbursement shall state the period for which the legislator is entitled under this resolution to receive reimbursement for his legislative expenses. In the event that a legislator does not qualify under this resolution for reimbursement for legislative expenses for an entire calendar month, or if the Legislative Assembly was in session for part of a calendar month, the amount of reimbursement for that calendar month shall be computed on a pro rata basis in compliance with this resolution. All claims must be filed within 30 days after the end of the calendar year to which the claim relates, or within 30 days after the member died or otherwise ceased to be a member of the Legislative Assembly.

"(5) The Secretary of State shall audit and allow all claims for reimbursement of legislative expenses authorized by this resolution that are approved by the presiding officer of the house of which the legislator is or was a member. In the event of the death, resignation or incapacity of the presiding officer of either house, or if such officer is out of the state, the Legislative Fiscal Officer shall approve claims for reimbursement filed by members of that house.

"(6) The Secretary of State shall draw his warrant on the State Treasurer for payment of claims authorized by this resolution out of the appropriation for the payment of expenses of the

Fifty-first Legislative Assembly, in the same manner as other expenses of the session are paid."

The alternative writ alleges that during the regular session of the 51st legislative assembly, each of the relators incurred telephone charges in the regular performance of his official duties; that each submitted a claim for reimbursement for such expenses on the prescribed form; that each claim was approved by the presiding officer of the house of which the claimant is a member; and that the claims were filed with the defendant for audit and allowance as provided by the resolution.

The relators further allege that the defendant refused to audit or allow either of the claims or to draw a warrant for the payment thereof because of defendant's doubt as to the constitutionality of the resolution.

Defendant's answer admits all of the allegations of the writ except the allegations that relators claims are for legislative expenses.

The relators demurred to the answer on the ground that the facts alleged are insufficient to constitute adequate cause for the defendant's refusal to audit and allow relators' claims referred to in said writ and to draw warrants for the payment thereof.

Defendant's contention that senate joint resolution No. 1 is unconstitutional is based upon the claim that the resolution violates Article IV, § 29 of the Oregon Constitution. Article IV, § 29 provides for the compensation of legislators and contains an allowance for certain personal expenses. As originally adopted in the constitution of 1859, Art IV, § 29 read as follows:

"The members of the legislative assembly shall receive for their services a sum not exceeding

three dollars a day from the commencement of the session; but such pay shall not exceed in the aggregate one hundred and twenty dollars for per diem allowance for any one session. When convened in extra session by the governor they shall receive three dollars per day; but no extra session shall continue for a longer period than twenty days. They shall also receive the sum of three dollars for every twenty miles they shall travel in going to and returning from their place of meeting, on the most usual route. The presiding officers of the assembly shall, in virtue of their office, receive an additional compensation equal to two-thirds of their per diem allowance as members."

Although the people of Oregon voted on numerous proposals to amend section 29, it remained unchanged until 1942. In that year it was amended to increase the per diem compensation to $8 for no more than fifty days and the mileage was changed to 10 cents a mile. These changes are not material to the present case.

Article IV, § 29 reached its present form by amendment in 1950. It now reads as follows:

"The members of the Legislative Assembly shall receive for their services a salary of six hundred dollars ($600) per annum, payable as provided by law. For each session of the legislature, they shall also receive the sum of 10 cents for every mile they shall travel in going to and returning from their place of meeting, on the most usual route, and no other personal expenses. The presiding officers of the assembly shall, in virtue of their office, receive an additional compensation equal to one-third of their annual allowance as members."

It will be noted that section 29 as originally adopted contained no express provision prohibiting

allowance for personal expenses. However, this court held that section 29 impliedly prohibits the payment of personal expenses. *Jones v. Hoss,* 132 Or 175, 285 P 205 (1930). The 1950 amendment added the phrase "and no other personal expenses." This amendment changed the then existing implied prohibition against the payment of personal expenses to the express prohibition contained in the present form of the section.

In a narrow sense the object of the proceedings in this case is to recover the expenditures made by these relators for the two telephone charges allegedly made in the regular course of the relators' duties as members of the legislative assembly. The real object of the proceedings is, however, to test the validity of senate joint resolution No. 1. The writ, the answer, and the reply, constituting the pleadings in this case can be regarded as raising this broader issue. This was the intendment of the parties and this was the basis upon which we determined that the case was of such public importance as to warrant our accepting original jurisdiction.

As we have indicated above, the defendant attacks the resolution as an unconstitutional exercise of power by the legislature in violation of Article IV, § 29, contending that it authorizes the expenditure of state funds for personal expenses of the legislators and that its effect is to increase the compensation of the members of the legislature beyond the limits of Article IV, § 29. If the resolution is so construed, the defendant's position must be sustained. We must decide whether that construction is warranted.

The solution of the problem presented by the pleadings rests upon the application of settled principles of constitutional law. The most basic and fundamental of these, as it relates to this case, is our

constitutional system of separation of powers of government. Article III, § 1 of the Oregon Constitution commands:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

The legislative power which has been vested in our state legislature by the people is plenary and complete except as that power is limited by the state constitution itself, or by the federal constitution. As stated by Justice LUSK, speaking for this court in *State ex rel Chapman v. Appling,* 220 Or 41, 47, 348 P2d 759, 762 (1960), "a state constitution does not confer power on the legislature, but is a limitation on power, and therefore it is competent for the legislature to enact any law not expressly or impliedly forbidden by the state constitution or prohibited by the Constitution of the United States * * *." See also, *Latourette v. Clackamas Co. et al.,* 131 Or 168, 170, 281 P 182 (1929); *Eastern & Western Lbr. Co. v. Patterson,* 124 Or 112, 121, 258 P 193, 264 P 441 (1928); *Ryan v. Harris,* 2 Or 175, 176 (1866); 1 Cooley, Constitutional Limitations (8th Ed 1927), 175-179, 354-355. In the exercise of its inherent power the legislature may appropriate and expend money for whatever purpose it pleases unless its action violates some limitation found, either expressly or impliedly, in the constitution. Within these limits legislative action is not subject to control by the courts. Moreover, in passing upon the validity of legislative action the courts must presume that such action is

constitutional unless the contrary is clearly shown. *City of Portland v. Goodwin,* 187 Or 409, 416, 210 P2d 577 (1949); *Fox v. Galloway,* 174 Or 339, 347, 148 P2d 922 (1944); *Wright v. Beveridge,* 120 Or 244, 248, 251 P 895 (1927); *State v. Eaton et al.,* 119 Or 613, 616, 250 P 233 (1926); *Pacific Elevator Co. v. Portland,* 65 Or 349, 384, 133 P 72, 46 LRA NS 363 (1913).

██ It is patent, then, that we are not at liberty to strike down the resolution in this case merely because we might think that the legislature was unwise in adopting it, or that the procedure adopted is susceptible to abuse, or for any other reason short of a violation of the constitution. As we said in *Eastern & Western Lbr. Co. v. Patterson,* supra, "In adjudging the validity of the statute involved in the case, it is not our privilege to consider the desirability, expediency, policy, justice or wisdom of its enactment." (124 Or at 121). This principle requiring us to give judicial deference to legislative action is applicable not only in the interpretation of the statutes constituting the final act of the legislature, but extends also to all other legislative processes, including the enactment of resolutions and the procedures which are directed by them. Accordingly, the resolution in question and the procedure which it authorizes is entitled to the benefit of this judicial respect.

██ Applied to the acts of the individual members of the legislature, the principle which we here recognize requires us to assume that they perform their legislative function in good faith and in accordance with the oath of their office. See, *Wittenberg et al v. Mutton et al,* 203 Or 438, 447, 280 P2d 359 (1955). We must, therefore, assume that each member of the legislature who files a claim in accordance with the procedure provided for in senate joint resolution No. 1

will do so, not in bad faith and in violation of the constitutional restriction against reimbursement for personal expenses but, as the resolution provides, for the purpose of obtaining reimbursement for legislative expenses. This assumption of integrity attends not only the conduct of the member of the legislature who presents his claim, but also the action of the presiding officer who approves a claim in accordance with the procedure outlined in paragraph (4) of the resolution. We must also assume that the approval of the presiding officer called for by the resolution will not be exercised capriciously, but only if he is satisfied that the claim is for a legislative expense. It is not within our judicial power to require a more specific control in the exercise of the power delegated to the presiding officer by the legislative assembly.

Paragraph (4) of the resolution could have been more tightly drafted to provide for certain safeguards against the presentation and approval of claims for expenses not authorized by the constitution. Thus, it could have been provided that each claim submitted must be supported by a statement of the specific items for which the claimed expense was incurred. But we have no power to require the legislature to set up particular accounting procedures by which the validity of its expenditures might be demonstrated; expenditures made pursuant to its authorization, even though no specific procedures are set up for the detection of unlawful claims, must be regarded as valid unless there is proof that the claim was for a non-legislative expense. The manner in which that proof is to be adduced will be considered later in this opinion.

At this point it is appropriate to observe that although the courts cannot control the mechanics by

which the legislature expends its appropriation for legislative expenses, the checks and balances provided in our constitution furnish a measure of such control through the executive branch of government. Article VI, § 2 provides in part that the Secretary of State "shall be by virtue of his office, Auditor of public Accounts." Our statutes implement this constitutional grant of power to the Secretary of State. ORS 291.464 provides that "the Secretary of State shall audit all duly approved claims lawfully incurred in pursuance of any legislative appropriation and shall draw his warrants on the State Treasurer in payment thereof."

■ In the exercise of his authority as auditor of public accounts the Secretary of State does not, of course, perform a judicial function in the sense that his decision to allow or disallow a claim is final. *State v. Brown,* 10 Or 215, 219-228 (1882). However, he is vested with the power to decide initially whether the claim presented was in fact incurred and whether it is a type authorized by law. *Boyd v. Dunbar,* 44 Or 380, 383, 75 P 695 (1904); *Shattuck v. Kincaid,* 31 Or 379, 393, 49 P 758 (1897). To aid him in carrying out this discretionary function the statutes authorize him to demand proof of the claim presented. ORS 291.466 provides that "[w]henever any account is presented to the Secretary of State for settlement, he may require the person presenting the account, or any other person or persons, to be sworn before him touching such account and, when so sworn, to answer orally or in writing as to any facts relating to the justness of the account." Further authorization for scrutiny of claims is found in ORS 291.470 which provides in part that persons having claims against the state "shall exhibit the claim, with the evidence in

support thereof, to the Secretary of State." Vested with this power the Secretary of State could, as a condition to the allowance of a claim presented pursuant to senate joint resolution No. 1, insist that the claimant reasonably itemize the expenditures for which the claim is made.

Thus it is seen that the constitution wisely delegates to an executive officer of the state, rather than to the courts, the initial duty of exercising surveillance over the expenditure of public funds. The ultimate duty of determining whether a claim was authorized and in fact incurred is, of course, to be performed by the courts. We make note of these respective functions of the judicial and executive branches of government to emphasize the point previously made, i.e., that we cannot adjudge the resolution invalid merely because the procedure which it authorizes for submitting and approving claims for legislative expenses does not require specific accounting checks and safeguards.

Our conclusion is, then, that the procedure provided for in paragraph (4) of senate joint resolution No. 1 is unobjectionable from a constitutional standpoint.

We have proceeded with our analysis of senate joint resolution No. 1 upon the assumption that reimbursement is not authorized unless an *actual* expenditure for a legislative purpose has been made by the claimant. We recognize that the resolution is open to a different interpretation. The preamble together with certain provisions of paragraph (4) of the resolution could be construed as authorizing the payment of claims up to the maximum amount even though the claimant did not in fact incur the expense.

Such an interpretation would render the resolution unconstitutional. Article IV, § 29, authorizes a maximum compensation of six hundred dollars per annum for each member of the legislature. No additional *compensation* may be authorized by the legislative assembly. *State ex rel Chapman v. Appling,* 220 Or 41, 69, 348 P2d 759 (1960); *Jones v. Hoss,* 132 Or 175, 179, 285 P 205 (1930). The constitution does not prohibit the reimbursement of *legislative expenses* and this is so even though the expense is incurred by a member of the legislature acting individually and separately as he performs his legislative function.

But a mere declaration in a resolution or statute that members of the legislature expend a stated monthly minimum sum in excess of the compensation paid them does not establish as an accepted fact that each of them actually makes such expenditures. If, then, the resolution were construed as authorizing the payment of a gross maximum sum, in addition to the compensation expressly provided for in the constitution, it could result in the payment of state funds for purposes other than reimbursement for expenses incurred in carrying out legislative functions. In those instances where the expenses were not incurred pursuant to a legislative function, the sums paid to the claimant would, in effect, constitute additional compensation, payment of which would clearly violate Article IV, § 29.

In other states legislation providing for the payment to each member of the legislature of a fixed amount not limited to expenditures for legislative purposes has been held unconstitutional. *Ashton v. Ferguson,* 164 Ark 254, 261 SW 624 (1924); *The State ex rel. Griffith v. Turner, Auditor,* 117 Kan 755, 233 P 510 (1925); *Opinion of the Justices,* 95

N H 533, 64 A2d 204 (1949); *Scroggie v. Bates, et al.,* 213 So C 141, 48 SE2d 634 (1948); *Peay v. Nolan,* 157 Tenn 222, 7 SW2d 815, 60 ALR 408 (1928).

In summary, it is our conclusion that state funds appropriated by the legislature for legislative expenses may be paid pursuant to senate joint resolution No. 1 to individual members of the legislative assembly as reimbursement for legislative expenses actually incurred; that such payment may not be made as a gross sum irrespective of the amount actually expended for legislative purposes; and that claims for reimbursement for expenditures may be approved by the presiding officer pursuant to paragraph (4) of the resolution without a specification of the items by the claimant in filing his claim for legislative expenses. This conclusion is consistent with the position taken in our previous cases. In *State ex rel Chapman v. Appling,* 220 Or 41, 348 P2d 759 (1960) we held that Article IV, § 29 was a limitation upon the power of the legislative assembly to increase its compensation beyond the stated amount set forth in section 29. We did not hold that the legislature could not reimburse its members for legitimate legislative expenses incurred by them.

In *Jones v. Hoss,* 132 Or 175, 285 P 205 (1930) we held that the legislature could not appropriate a fixed daily amount of money to pay the personal incidental expenses of its members. While the resolution in that case may have been subject to the vice of allowing a gross sum without regard to actual expenses, the decision was based solely on the ground that payment of personal expenses would be tantamount to increased compensation. In so holding the court recognized the view which we apply in the case at bar, viz., that the "limitation against personal ex-

penses has no application to official or legislative expenses." (132 Or at 181)

We shall next consider the validity of paragraph (2) of senate joint resolution No. 1. Under that section provision is made for the reimbursement of legislative expenses up to a maximum of $150 a month incurred by members of the legislature during the period when the legislative assembly is not in session. Although no request is made for reimbursement under paragraph (2) in the present case, we regard the pleadings as raising the issue of the validity of the resolution as a whole and we shall, therefore, determine whether paragraph (2) of the resolution is a valid authorization for reimbursement for inter-session expenses.

If we took the view that the legislature functions only during the period it is in formal session, it would be possible to argue that no expense incurred between sessions, irrespective of the purpose for which it was incurred, could be a legitimate legislative expense. It has been held by some courts that upon the sine die adjournment of the legislature "all its functions as a legislative body cease." *Fergus v. Russel,* 270 Ill 304, 344, 110 NE 130 (1915). In the *Fergus* case it was held that "[a]s all the powers of the legislature, as such, cease upon its final adjournment, it must follow that all the powers which have been delegated by it or either house thereof, to a committee by mere resolution cease also." 270 Ill at 344. See also, *Dickinson, State Auditor v. Johnson,* 117 Ark 582, 592, 176 SW 116 (1915); *Swing v. Riley,* 13 Cal2d 513, 518-519, 90 P2d 313 (1929). It is generally conceded in these cases that the legislature may, by act, as distinguished from resolution, validly create committees to operate during the legislative

interim. See, e.g., *Dickinson, State Auditor v. Johnson,* supra, 117 Ark at 589-590.

█ The premise upon which the foregoing cases are based, i.e., that the legislature ceases to exist upon adjournment sine die, has been rejected in Oregon. In *State ex rel Stadter v. Patterson,* 197 Or 1, 9-10, 251 P2d 123 (1952) this court said: "Whatever may be the rule elsewhere, the legal existence of the legislative assembly in Oregon continues after the adjournment of a regular biennial session. It cannot function as such upon its own initiative after that date, but this is true merely because no member of the legislature has power to reconvene it. When, pursuant to constitutional authority, the governor convenes it, there begins a new session of an old legislative assembly." The court went on to say:

"* * * If the legislative assembly continues as such after adjournment sine die, so do the senators and representatives who comprise the assembly continue as senators and representatives. The statutes recognize this fact. Chapter 90 of the Laws of 1947 provides in part:

" 'When any vacancy occurs in the office of senator * * * due to * * * resignation * * * such vacancy shall be filled by the appointment * * *. If, however, such vacancy does not occur during a legislative session and if an election is to intervene between the occurrence of any such vacancy and the time of convening of any regular or special session of the legislature at which such vacancy can be filled by vote of the electors * * * no interim appointment shall be made * * *.'

"Here is a clear recognition that a senator or representative continues as a public officer after adjournment sine die." 197 Or at page 10.

A similar view has been taken elsewhere. In re *Davis,* 58 Kan 368, 49 P 160 (1897); In re *Opinion of the Justices,* 239 Mass 603, 133 NE 452 (1921).

■ Although *State ex rel Stadter v. Patterson,* supra, did not involve the question of the legislative assembly's power to authorize by resolution expenditures to be incurred between sessions, it would seem clear that if the legislative assembly has, through the adoption of resolutions, the power to expend appropriated funds for legislative purposes during its formal session, which is conceded, it also has the power to authorize expenditures after adjournment and while it still exists as a legislative body. There is nothing in our constitution which limits the legislature to expenditures during the session, nor dictates that reimbursement for inter-session expenditures for legislative purposes can not be allowed by resolution. We shall not read such a limitation into the constitution.

The conclusion reached in *State ex rel Stadter v. Patterson,* supra, as to the continuing existence of the legislative assembly after adjournment sine die is in keeping with the practice which has been followed in Oregon in carrying on the business of legislation during the periods between sessions. Expenditures of state funds during the interim have regularly been authorized by resolution. Prior to the adjournment of each session the legislative assembly makes an appropriation for the expenses necessarily incurred in making ready for the following session. The money so authorized is expended between sessions for the purchase of various items which are to be used by the following assembly. And after the close of each session expenditures are made in the publication of the journals and sessions laws, in mailing various

items to the members of the assembly who have returned to their homes, and for other purposes involving the expenditure of legislative funds.

The most substantial expenditures for legislative purposes between sessions are those made by interim committees. The authorizations to pay such expenses are found in resolutions rather than in the acts of the assembly, although the initial appropriations for legislative expenses out of which the interim committee expenses are to be paid is created by legislative act.

There is a close analogy between the authorization for interim committee expenditures and the authorization contained in paragraph (2), senate joint resolution No. 1. In each case the maximum amount authorized is stated; in each case the authorization is for an expenditure to be incurred between sessions; in each case the purposes for which the expenditure is to be made are not known specifically in advance and a wide range of discretion as to the manner in which the funds are to be spent is vested in the legislative agent, limited in each case only by the broad statement of purposes in the resolution.

■ We hold that senate joint resolution No. 1 is a valid authorization for the reimbursement of expenditures made by individual members of the legislative assembly for legitimate purposes, i.e., expenses for legislative purposes.

It is apparent from the foregoing treatment of senate joint resolution No. 1 that its constitutionality rests upon the legislative observance of the distinction between legislative and personal expenses. The distinction, like many we are called upon to make, is not easily described and formulated. Before we attempt to do so, we think it is advisable to note the

procedural setting in which the distinction must be made.

As we have already indicated, expenses certified and approved in accordance with the procedure prescribed by paragraph (4) of the resolution as having been incurred in furtherance of a legislative purpose are presumed to have been incurred for such a purpose. When a suit is properly brought challenging the propriety of claims for expenses under the resolution, the questioned claim will be subject to judicial appraisal. In such a proceeding the judicial deference accorded legislative action, to which reference has previously been made, continues to benefit the claimant. However, the claimant must show that the expense was in fact incurred and the purpose for which it was incurred. When this has been done the court must then determine whether the purpose for which the expense was incurred is a legislative or personal one. It is at this stage of the procedure that the validity of the claim can be tested against the constitutional requirements of Article IV, § 29 and at this point the court must decide whether the expenditure was for a legislative or for a personal purpose. In making that decision the courts must accede to the judgment of the presiding officer in approving the claim as a legislative expense unless there is no reasonable basis for so classifying it, *Woodward v. Pearson,* 165 Or 40, 44, 103 P2d 737 (1940), and in passing upon the question the court is not privileged to concern itself with the reasonableness of the legislative action in providing the procedure for approving claims or the wisdom of the presiding officer in deciding that the expenditure was needful in furtherance of a legislative end. *Woodward v. Pearson,* supra, 165 Or at 56.

With this restriction on its function, the judiciary has the duty to determine whether a specific expenditure is legislative or personal. The distinction can be drawn only as the expenditure in each instance is examined with reference to the end it was intended to serve. An expenditure made for a particular item may, under one circumstance, constitute a legislative expense and under another circumstance constitute a personal expense. The expenditure of money by a legislator for meals while in Salem in attendance at the legislative session would ordinarily constitute a personal expense; money spent by him for meals in another city during the course of a legislative investigation would ordinarily constitute a legislative expense. There are infinite gradations which span the spectrum of purposes from the clearly personal to the clearly legislative. In many instances these purposes merge, reflecting a concern for both the job of legislating and the realization of self-interest. The line of division, to the extent that there is one, frequently is marked by custom and usage—the way in which the community regards the fair allocation of the financial burden when one of its members, acting in an official capacity, spends money out of his own pocket. It should be evident, therefore, that in the absence of the specific facts attending the expenditure, including the purpose for which it was made, an attempt upon our part to more definitely categorize the two types of expenditures would be of little value.*

In the present case the claims submitted and rejected were for charges incurred for telephone service

---

* In *Woodward v. Pearson*, 165 Or 40, 54, 103 P2d 737 (1940) this court recognized that an act providing that a copy of O.C.L.A. was to be furnished to each member of the legislature did not violate the Article IV, § 29.

from the relators' respective residences while in attendance at the legislative session in Salem. The defendant's answer does not admit that the expenditure was made for the purpose alleged. Thus an issue of fact is presented.

The application for the alternative writ having been filed as an original proceeding in this court and there being no evidence before us, we can not resolve that question of fact.

■ The defendant refused to audit the claims of the relators on the ground that senate joint resolution No. 1 was unconstitutional. The writ will issue to require the defendant to audit the claims. Since the allowance of the claims rests upon the exercise of the discretion of the defendant, the writ cannot require him to allow the claims.

■ The defendant argues that because telephone service is available to all members through the use of telephones located in the Capitol building (as provided by ORS ch 171 and house resolution No. 1), these particular expenses incurred by relators were not necessary to enable them to carry on a part of the legislative function. We have made it clear that it is the prerogative of the legislature to decide how legislative expenses are to be incurred. Certainly we cannot prescribe the location of telephones to be used in carrying on the legislative function.

■ The defendant contends that the reimbursement for expenditures for which relators presented their claims could not be authorized by resolution and that an act of the legislature was necessary. The 51st legislative assembly, by enactment (Oregon Laws 1961, ch 1) appropriated funds for legislative expenses. It need not enact a separate statute author-

izing expenditures of appropriated sums for specific items.

It is hereby ordered that a peremptory writ issue requiring defendant to audit the relators' claims.

McALLISTER, C. J., and ROSSMAN, J., concur in part and dissent in part.

McALLISTER, C. J., dissenting in part.

I dissent from that portion of the majority opinion which holds that an individual member of the legislature may be reimbursed for expenses not incurred in the performance of a duty imposed on the member by the legislature, but incurred voluntarily at the will of the member even though incurred by him because of his service in the legislature.

In my opinion expenses incurred by a member of the legislature which may be classed as legislative expenses and for which he may be reimbursed include only expenses incurred by him in the performance of duties imposed on him by the legislative assembly.

The constitution classifies as a personal expense the expense incurred by a member in traveling to the state capitol to attend the legislative session and in returning to his home. In my opinion, the description of this travel expense, without which the legislature could not convene, as a personal expense makes imperative the conclusion that the expenses usually and ordinarily incurred by a legislator in performing his normal duties are the expenses referred to in the constitutional phrase "no other personal expenses."

The foregoing is the construction placed on the phrase "no other personal expenses" by the legislative committee appointed pursuant to house joint resolution No. 5 of the 45th legislative assembly to

prepare an argument in support of said resolution, the adoption of which amended section 29 to its present form. The argument published in the official Voters' Pamphlet for the regular general election held on November 7, 1950, included the following statements:

"* * * * *

"The Constitution of Oregon has justly reserved unto the people the right to set the compensation of the members of the legislative assembly.

"The present rate of compensation is limited to $400.00 per session. Members of the last session received approximately $3.60 per day—after taxes. *There is no additional allowance for actual expenses other than a small allowance for travel pay to and from Salem once each season.*

"* * * * *

"Therefore this amendment is submitted to you, the people of Oregon.

"This amendment provides the modest pay of $600.00 per year!

### "NO EXPENSE ACCOUNT

*"It does not provide any additional sum for expenses. * * *"*

This court has frequently resorted to arguments in the official Voters' Pamphlet as an aid to construction of measures submitted to the voters. See *State ex rel Chapman v. Appling,* 220 Or 41, 68, 348 P2d 759, and cases therein cited. Although I agree that the use of such material should be discriminating and cautious, I think the legislative committee construed the amendment in the only manner possible without distortion of the plain meaning of the language used.

It is significant that for nearly a century prior

to the amendment of Section 29 in 1950 the expenses which senate joint resolution No. 1 now classifies as legislative expenses were considered as personal expenses of the members incident to their legislative service, and were paid by the individual legislators. The existence of this ancient and universally recognized distinction between legislative and personal expenses was understood and accepted both by the legislature which submitted the constitutional amendment and by the voters who adopted it. Senate joint resolution No. 1 by its language also recognizes that since the adoption of our constitution the expenses which are now classed as legislative have been considered the personal expenses of the members.

By the great weight of authority legislative acts or resolutions which have authorized the payment of an allowance to a member of the legislature to be used by such legislator at will have been held unconstitutional even though in such cases the allowance was for the payment of expenses of the kind described in senate joint resolution No. 1 as legislative expenses. *State ex rel v. Turner,* 117 Kan 755, 233 P 510; *Ashton v. Ferguson,* 164 Ark 254, 261 SW 624; *Peay v. Nolan,* 157 Tenn 222, 7 SW 2d 814, 60 ALR 408; *Peay v. Graham,* 162 Tenn 153, 35 SW2d 568; *Scroggie v. Bates et al,* 213 SC 141, 48 SE2d 634; and *Hall v. Blann,* 227 Ala 64, 148 S 601.

The cases cited above which have considered the distinction between legislative and personal expenses have not questioned the right of the legislature to pay expenses clearly legislative. They have been concerned rather with acts providing for the payment of an allowance for expenses declared to be legislative which a member could incur or not at his option.

In *State ex rel v. Turner,* supra, the Kansas court was dealing with an act of the legislature which provided that each member of the legislature should receive $5 per day "expense money" for each day of any regular or special session of the legislature. The resolution did not indicate whether the expense money was for legislative or personal expenses. The court apparently assumed that to some extent at least, the allowance would reimburse the members for expenses incidental to their duties. The court, after pointing out that the constitution fixes the compensation of members of the legislature, said:

"The constitution fixes the compensation of members of the legislature at $3 per day and provides that such compensation shall not be more than $150 each for each regular session, nor more than $90 each for each special session. This compensation, fixed by the constitution, cannot be increased. Any law which in any way, either directly or indirectly, increases the compensation of any member of the legislature must be held invalid.

"* * * * * *

"Few, if any, of the members of the legislature will use as much as five dollars a day as expenses incidental to the performance of their duties. What will be done with the remainder of the five dollars a day after each member pays all expenses incident to his duties? If he keeps the money—and it is presumed that he will—it adds to his compensation; it cannot do otherwise. The constitution said $150 and no more; one dollar more violates the constitution."

The court held the Kansas act invalid because it increased the compensation of the legislators in violation of the constitution.

In *Ashton v. Ferguson,* supra, the court considered the validity of a resolution authorizing the

payment to each representative of $100 "with which to pay expenses of stamps, telephone, telegraph and other necessary expenses." (164 Ark at 257). The constitution, after fixing the per diem and mileage of the legislators, provided that "they shall receive no compensation, perquisite or allowance whatever, except as herein provided." (164 Ark at 258). It was contended that the resolution was "merely a provision by each of the houses of the General Assembly for the payment of the expenses of conducting the session." (164 Ark at 258). In disposing of this contention, the court said:

"* * * The provision for the payment of one hundred dollars to each member is nothing more nor less than an allowance. It is an allowance for the use of each member for the purposes mentioned, but it is to be used at the will of the members to whom it is paid, and is, after all, a mere allowance, and not the payment of expenses incurred by the house itself.

"Each house may provide conveniences, such as stationery, pencils, ink, telephone and telegraph and other things for the use of the members, and pay for the same out of contingent expenses, but it is quite another thing to attempt to make an allowance of funds to a member to be used at will. One is the payment of a legitimate expense, and the other is an allowance placed at the disposal of the members to be used at his own discretion and will. One is a payment of necessary expenses of the house itself, and the other is an allowance to the member in spite of the provision of the Constitution to the contrary." (164 Ark at 259)

In *Hall v. Blann,* supra, the Supreme Court of Alabama declared unconstitutional an act purporting to give each member of the legislature an allowance not exceeding $4 per day for "reasonable expenses incurred by him because of and while in attendance

upon the sessions of the Legislature." The court treated the allowance as intended to cover personal expenses incurred in the performance of legislative duties among which expenses the court enumerated "stenographic work, telephone and telegraph service, clerk hire, stamps, and like expenses." It will be noted that the Alabama act authorized the payment within a maximum limit of $4 per day of expenses of the same class enumerated in senate joint resolution No. 1. In holding the act unconstitutional the court said "There is a distinction, under our Constitution, between expenses of the Legislature, controled by the legislative body, and expenses incurred by the member on his own account and at his discretion within a maximum limit."

In *Peay v. Nolan*, supra, and in *Peay v. Graham*, supra, the Supreme Court of Tennessee held unconstitutional legislative acts which authorized the payment to each member of a fixed allowance for postage, stenographic hire and other necessary expenses, on the ground that such allowances in gross were a forbidden increase in compensation.

It is obvious from the authorities cited that if the effect of a legislative act or resolution authorizing the payment of expenses is to increase the compensation of the members such act or resolution would be unconstitutional.

The authorities differ as to the right of a legislator to reimbursement for expenses incurred in serving on a legislative interim committee after the assembly has adjourned sine die. Some courts have held that a member cannot be reimbursed for such expenses. See *Fergus v. Russell*, 27 Ill 204, 344, 111 NE 130, and *Dickinson, State Auditor v. Johnson*, 117 Ark 582, 592, 176 SW 116. Other courts have

held that the expenses of legislators incurred in serving after adjournment on a duly constituted interim committee may be paid. See *State ex rel Jones v. Atterbury*, 300 SW2d 806 (Mo 1957) ; *State v. Aronson*, 132 Mont 120, 314 P2d 849,858. However, no authority has been cited for the position taken by the majority that an individual legislator upon whom no duty has been imposed by the assembly may be reimbursed for expenses incurred after adjournment upon his own volition and at his own discretion. I have discovered no authority even suggesting that such expenses could be classed as legislative expenses.

Although this court has stated in *State ex rel Stadter v. Patterson*, 197 Or 1, 251 P2d 123, that "the legal existence of the legislative assembly of Oregon continues after the adjournment," it is obvious that such an existence is merely inchoate. Certainly the legislative assembly is totally impotent to perform any act or to exercise any power after sine die adjournment. Although the members continue to be senators and representatives until the expiration of their terms, they also are devoid of power to perform any legislative duties except such as they may have been duly authorized to perform by the legislature through the passage of an act or the adoption of a joint resolution.

For the reasons stated, it is my conclusion that the only expenses for which a member of the legislature may be reimbursed lawfully under Article IV, section 29, of the constitution, are those expenses incurred in the performance of duties imposed on him by act or resolution duly adopted by the legislature.

Mr. Justice ROSSMAN consurs in this opinion.